Lawrence R. ALBERTI, et al.,
Plaintiffs–Appellees,
Cross–Appellants,

v.

Johnny KLEVENHAGEN, et al.,
Defendants–Appellants
Cross–Appellees.

No. 88–2570.

United States Court of Appeals,
Fifth Circuit.

March 21, 1990.

Roderick O. Lawrence, Lisa Rice, Houston, Tex., for defendants-appellants cross-appellees.

Jim Oitzinger, Houston, Tex., for Alberti, et al.

Before LIVELY,[1] JOLLY, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This is an appeal from an interim award of attorneys' fees to James Oitzinger and Gerald Birnberg pursuant to 42 U.S.C. § 1988 for work performed in the first fifteen years of this suit testing conditions in the Harris County jail, filed in 1972 and still pending. The district court awarded attorneys' fees in the amount of $1,526,-090.79 to Oitzinger and in the amount of $536,509.30 to Birnberg. We affirm in part, reverse in part, and remand.

**I**

On August 14, 1972, several lawyers filed this suit against members of the Harris County Commissioners Court and the Harris County Sheriff's Department on behalf of inmates in the Harris County Jail, alleging that the conditions of confinement denied constitutional and statutory rights. The district court certified a class on February 4, 1975, and then entered a consent judgment requiring, among other things, that defendants submit a plan to bring the jail facilities into compliance with federal and state standards, and providing for judicial review of its effectiveness. The court expressly retained jurisdiction to issue interim orders until the Commissioners Court and the Sheriff complied with the decree.

Defendants submitted a plan, and on December 16, 1975, the court entered a supplemental memorandum and order requiring specified action to alleviate overcrowding and other conditions of confinement.

Thereafter, the court held compliance hearings and entered additional remedial orders on various issues. The first hearing was held in 1978 to approve defendants' construction plans for a new jail. The next hearings were held in the summer of 1982 and they concerned a move to a new jail and its staff. Hearings concerning the jail's staff followed in 1983, 1984, and 1985. Now, sixteen years after this suit was filed, the court still monitors compliance.

Oitzinger has represented the plaintiff class since the suit was filed. Birnberg became "trial" counsel in August 1975 and has served from that time until the present, although there has never been a trial. In December 1975, after the consent judgment was entered, the court appointed Oitzinger and Birnberg as ombudsmen. Oitzinger and Birnberg were charged as ombudsmen with monitoring defendants' compliance with the consent judgment and the December 16, 1975 order, and reporting to the court. We criticized the appointment, and on April 28, 1987, the court relieved Oitzinger and Birnberg of their duties as ombudsmen and appointed a special master to replace them. *See Alberti v. Klevenhagen,* 790 F.2d 1220, 1229–30 (5th Cir.1986).

The court conducted evidentiary hearings on attorneys' fees in November and December 1986 with live testimony, exhibits, depositions, and affidavits. The court considered hours expended during the period from filing until March 1, 1987. *Alberti v. Sheriff of Harris County,* 688 F.Supp. 1176, 1184 (S.D.Tex.1987). On September 1, 1987, the court entered an amended order awarding Oitzinger fees totaling $1,526,090.79 and awarding Birnberg fees totaling $536,509.30. *Alberti v. Klevenhagen,* 688 F.Supp. 1210 (S.D.Tex.1987).

**II**

In this circuit, to determine a reasonable fee, the district court considers the

---

1. Circuit Judge of the Sixth Circuit, sitting by designation.

twelve factors enumerated in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974), in a three-step process: "(1) ascertain the nature and extent of the services supplied by the attorney; (2) value the services according to the customary fee and quality of the legal work; and (3) adjust the compensation on the basis of the other *Johnson* factors that may be of significance in the particular case." *Leroy v. City of Houston*, 831 F.2d 576, 583 n. 11 (5th Cir.1987), *cert. denied*, 486 U.S. 1008, 108 S.Ct. 1735, 100 L.Ed.2d 199 (1988).

In step one the district court determines compensable hours from the attorney's time records, including only hours reasonably spent. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Counsel is required to "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* Ideally, billing judgment is reflected in the fee application, showing not only hours claimed, but also hours written off. *See Leroy*, 831 F.2d at 576. The burden is on the fee petitioner to prove that the hours claimed were reasonably expended. *See Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941; *Leroy*, 831 F.2d at 586.

In step two the court selects "an appropriate hourly rate based on prevailing community standards for attorneys of similar experience in similar cases." *Sims v. Jefferson Downs Racing Ass'n*, 778 F.2d 1068, 1084 (5th Cir.1985). The number of compensable hours is then multiplied by the selected hourly rate to produce the "lodestar." *Id.*

■ Finally, the district court may, in appropriate cases, adjust the lodestar up or down in accordance with relevant *Johnson* factors not already included in the lodestar. "[T]he 'novelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litiga-tion are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (*Delaware Valley I*); *see also Blum v. Stenson*, 465 U.S. 886, 898–900, 104 S.Ct. 1541, 1548–50, 79 L.Ed.2d 891 (1984). In adjusting the lodestar the court must be wary of the fact that the lodestar "is presumed to be the reasonable fee," *Delaware Valley I*, 478 U.S. at 564, 106 S.Ct. at 3098; *Blum*, 465 U.S. at 897, 104 S.Ct. at 1548, and that upward adjustments of the lodestar are appropriate only "in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts," *Delaware Valley I*, 478 U.S. at 565, 106 S.Ct. at 3098. We review findings of fact supporting an award of attorneys' fees under the clearly erroneous standard, but review the award itself for abuse of discretion. *Leroy*, 831 F.2d at 584.

Defendants challenge: (1) the district court's acceptance in toto of Oitzinger's claim for 6,652 hours;[2] (2) the court's failure to distinguish between Oitzinger's role as plaintiff's attorney and his role as the court's ombudsman, and hence the failure to apply a lower rate to the ombudsman hours;[3] (3) the court's upward adjustment of the hourly rate for both Oitzinger and Birnberg based upon preclusion of other employment, time limitations imposed by the client under the circumstances, and case undesirability; (4) the court's enhancement of the lodestar for Oitzinger and Birnberg for risk of non-payment of fees; (5) the court's enhancement of the lodestar based upon the results obtained; (6) the court's adjustment for delay in receipt of payment; (7) the court's awarding of compensation to Oitzinger and Birnberg for trial of the attorneys' fees issues; and (8) the award of approximately $20,000 in costs for the services of special counsel

---

2. Birnberg's hours are not challenged.

3. The Commissioners Court and the Sheriff do not assert this claim against Birnberg, presum-ably because he did not seek reimbursement for any time he spent in his capacity as ombudsman.

associated by Oitzinger and Birnberg in connection with trial of the fee issues.

## III

The district court accepted Oitzinger's claim of 6,652 hours in its entirety. Defendants point out that at least 4,611 of those hours were based upon reconstructed time records and urge that many of the hours were not reasonably expended. All of the reconstructed hours were accumulated before January 1, 1983, when we adopted Local Rule 47.8.1 requiring contemporaneous time records.

### A.

■ A fee application for pre–1983 services can succeed even if unsupported by contemporaneous time records, *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1094 (5th Cir.1982), *modified on other grounds*, 701 F.2d 542, 545 (5th Cir. 1983) (en banc), *overruled in part, International Woodworkers of America v. Champion International Corp.*, 790 F.2d 1174 (5th Cir.1986) *aff'd sub nom., Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); *Harkless v. Sweeny Independent School Dist.*, 608 F.2d 594, 597 (5th Cir. 1979), although contemporaneous time sheets are the "preferred practice," *Webb v. Board of Education of Dyer County, Tennessee*, 471 U.S. 234, 238 n. 6, 105 S.Ct. 1923, 1926 n. 6, 85 L.Ed.2d 233 (1985). At the same time we do not accept such claims at face value. Indeed, we recently reduced the average hourly rate by 13% for incomplete time records.[4] *Leroy*, 831 F.2d at 586 n. 16.

The district court found Oitzinger's time records were "reliable and essentially accu-

rate calculations" of the time he expended, 688 F.Supp. at 1186, and that in addition to the time records submitted by Oitzinger "an abundance of other evidence" supported the hours he claimed including:

a. ... the Court's observation of work performed in the course of the lawsuit and the Court's familiarity with the case[;]

b. [t]he testimony of [Oitzinger] and the Court's assessment of [his] honesty and candor[;]

c. [t]he pleadings, court orders, memoranda of law and other reports and court records in the file of the case[;]

d. [e]xpert opinions of other attorneys opining as to the time which would have reasonably required to be expended by competent counsel in similar cases[; and]

e. [t]he amount of time expended by defendants' attorneys.

*Id.* at 1185–86 (citations omitted).

■ We are not persuaded that the district court's finding that Oitzinger expended the claimed hours is clearly erroneous. *See City of Riverside v. Rivera*, 477 U.S. 561, 572, 106 S.Ct. 2686, 2693, 91 L.Ed.2d 466 (1986) (applying clearly erroneous standard to district court's findings regarding the time expended by counsel). Nonetheless, the acceptance in toto of Oitzinger's claim of 6,652 hours by the district court when almost 70% of the hours claimed were based upon reconstructed time records casts doubt on the district court's decision that all of the hours claimed by Oitzinger were reasonably expended on the litigation.

### B.

There are two preliminary matters which must be addressed before we turn to the

---

**4.** We stated:

We are also troubled by the court's wholesale acceptance of plaintiffs' time records. In assessing time spent by plaintiffs' counsel for lodestar purposes, the court repeatedly acknowledged deficiencies in the billing records in this case, noting that some were reconstructed, after-the-fact summaries, some were often "scanty," some were never kept at all, and many lacked explanatory detail. Nevertheless, the district court accepted *in toto* the

number of hours evidenced by the records on such grounds as Mr. Botello's law school training in recordkeeping, the purported exercise of billing judgment, and that this court has required contemporaneous records only since 1983. None of these asserted grounds explain why such faulty records should be accepted with no reduction of the hours of the lodestar.

*Leroy*, 831 F.2d at 585 (citation omitted).

reasonableness question. We must satisfy ourselves that defendants have not waived their right to challenge in this court the district court's determination that the total hours claimed were reasonable either (1) by not submitting any evidence to the district court of the reasonableness of the total hours charged, or (2) by not submitting to this court a record of the proceedings below sufficient to evaluate the district court's decision as required by Fed.R. App.P. 10(b)(2).

■ We are persuaded that defendants did not waive the right to challenge on appeal the reasonableness of the total hours claimed merely because they submitted no evidence and relied solely on their briefs. Oitzinger points to *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1986), but it is inapposite. In *Blum* the defendant opposed the fee award on several grounds, including the unreasonableness of the total number of hours claimed. She submitted no evidence to the district court, relying upon the "arguments contained in her brief to the District Court and on that court's discretion." *Id.* at 891, 104 S.Ct. at 1545. The Court found that because the defendant "failed to submit to the District Court any evidence challenging the accuracy and reasonableness of the hours charged or the facts asserted in the affidavits submitted by [the fee petitioner,] [s]he therefore waived her right to an evidentiary hearing in the District Court." *Id.* at 892 n. 5, 104 S.Ct. at 1545 n. 5. The Court concluded that "[i]n view of the trial strategy she chose, [the defendant] waived her right to challenge in this Court the District Court's determination that the number of hours billed were reasonable for cases of similar complexity." *Id.* In this case, however, the defendants challenged Oitzinger's hours in an evidentiary hearing before the district court, and left nothing to the district court's discretion. Thus, they did not waive their right to challenge the district court's determination that the total hours were reasonable.

■ We are also not persuaded that the record is insufficient for our review. Oitzinger complains that the record on appeal does not contain the transcripts from various hearings, but defendants do not challenge any hours connected with these hearings. We decline to require them to be included in the record on appeal.

We turn now to the merits of the argument that the district court abused its discretion in finding that all of the hours expended by Oitzinger were reasonably expended on the litigation. The district court, after acknowledging that it is required to "carefully evaluate a fee petitioner's request for fees in terms of the reasonableness of time expended on the case," and after noting that the time spent by counsel monitoring defendants' compliance with the terms of the consent judgment was fully compensable, concluded that the hours claimed by Oitzinger were not duplicative or excessive and were "a reasonable reflection of the time and labor required by the case." 688 F.Supp. at 1186–87. The district court did not address the propriety of any particular items claimed by Oitzinger, discussing only the reasonableness of the total hours he claimed. The court based its finding that the hours claimed were reasonably expended largely upon the extensive relief obtained by counsel, reasoning that "[s]o long as the time expended by counsel in prosecuting the litigation reflected sound legal judgment under the circumstances and produced sufficiently satisfactory results, the time is deemed to have been reasonably expended." *Id.* at 1187 (citing *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939).

The district court is not only required to determine whether the total hours claimed are reasonable, but also whether particular hours claimed were reasonably expended. The court's reference to deeming hours to be reasonably expended is troubling because it strongly suggests that the district court did not abide by this standard. It is not the case that all claimed time is a fortiori reasonably expended if the *total hours* claimed by counsel appear to reflect sound legal judgment and resulted in satisfactory results. The district court cited *Hensley*'s discussion of the "results obtained," a factor under *Johnson*, to justify

only looking at the total hours. *Hensley,* however, does not substitute results obtained for carefully scrutinizing the fee petition to see if *particular hours* claimed were reasonably expended.[5]

It does not appear from this record that the district court determined if particular hours claimed were reasonably expended on the litigation. The Commissioners Court and the Sheriff specifically objected to numerous items in Oitzinger's fee request, but the court addressed their propriety only in general terms, never explaining why hours spent in particular activities were reasonably expended on the litigation and not unnecessary, duplicative, or excessive.

The questionable nature of many of the hours claimed by Oitzinger and the absence of particular findings makes it difficult to determine whether the time was reasonably expended. The court, for example, accepted approximately 3400 hours (52% of the hours claimed by Oitzinger) assertedly expended in "review," "conferences," or "monitoring." The hours claimed by Oitzinger under these headings include over 700 hours spent with various agencies, individuals, or entities such as the state district judges, the district attorney, court managers, Pre–Trial Release Agency employees, the United States Attorney, personnel from the Houston Chamber of Commerce, the Mental Health and Retardation Authority, jail architects, the construction superintendent, consultants on the jail project, the Texas Commission on Jail Standards, and the Harris County Trial Lawyers' Association. These hours were primarily justified as necessary to monitor defendant's compliance with the consent judgment.[6]

Although monitoring a consent judgment is a compensable activity, *Miller v. Carson,* 628 F.2d 346, 348 (5th Cir.1980), the discipline of legal work remains applicable. Monitoring is observing with a critical eye. Although in other contexts the role of a monitor may be more appropriately characterized as overseeing or supervising, these terms are not descriptive of the role a plaintiff's attorney plays in monitoring a consent judgment. With this definition of monitoring in mind, it is apparent that many of these hours were not necessary to monitor defendants' compliance with the consent judgment. Although some of the hours spent with the various agencies, individuals, and entities were unquestionably necessary to evaluate compliance, considering the broad reach of the compliance plan, it is plain that many of these hours claimed by Oitzinger involved much more than observing or information-gathering to determine if the defendants were complying.

Oitzinger also compiled hundreds of hours "reviewing" reports, books, and articles of questionable necessity. Certainly, Oitzinger can be compensated for reasonable amounts of time spent educating himself about topics directly relevant to the litigation. Even a cursory review of Oitzinger's fee petition, however, shows that several items claimed as review were not directly related to this litigation. For example, Oitzinger claims time spent (1) reviewing a *U.S. News and World Report* article entitled "The Power of Our Judges:

5. The *Hensley* Court stated: "The product of *reasonable hours* times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" 461 U.S. at 434, 103 S.Ct. at 1940 (emphasis added).

6. The primary component of the relief granted in the consent judgment was the construction of a new jail to relieve overcrowded conditions. The Commissioners Court and the Sheriff filed a plan with the court which included seeking the cooperation of the Harris County criminal justice system to help reduce the time an inmate spends in jail by speeding up case disposition. They also planned to use the Pre–Trial Release Agency to obtain more releases on personal recognizance and thereby ease the jail overpopulation in a limited but helpful way. The court ordered, without objection by defendants, that improvements in the Pre–Trial Release Agency be made and that a "preliminary hearing system" be established in Harris County criminal courts. The Commissioners Court, while having no authority to effect changes in the criminal justice system in Harris County, nevertheless agreed to encourage the cooperation of judges and administrators to help reduce the jail population by pre-trial releases on personal recognizance and by shortening the time from arrest to conviction.

Are They Going Too Far," (.25 hours); (2) reviewing a book entitled *Modeling and Assimilation of Court Systems* (4.00 hours); (3) reviewing book entitled *Counter–Deterrents* (5.00 hours); (4) reviewing book entitled *Opinion of the Law and Prisoner's Rights* (16.00 hours); and (5) reviewing a report entitled "The Challenge of Crime in a Free Society" (4.00 hours).

Including these and other items [7] reflects a lack of billing judgment. We intend no harsh criticism of this lawyer and do not suggest that he has not been candid with the court. Indeed, the deficiency is understandable if not predictable since Oitzinger had been admitted to practice law less than a year when he became involved in the *Alberti* litigation and over the past thirteen years has had very limited experience in the practice of law, handling only two jury trials, six bench trials, and a small amount of civil practice outside of *Alberti*. Oitzinger simply had little or no experience in billing clients for his services. This lack of experience is reflected not only by the questionable nature of some of the claimed hours, but also by his failure to write off *any* hours.[8]

On balance we are persuaded that the district court's finding that all of the hours claimed by Oitzinger as review, conferences, or monitoring were reasonably expended on the litigation must be vacated and reexamined by the district court.

## IV

The Commissioners Court and the Sheriff argue that the district court erred by failing to require Oitzinger to distinguish between work performed as plaintiffs' attorney and work completed as the district court's ombudsman, and by concluding that the same rate of compensation applied to Oitzinger in both roles. Defendants argue they were improperly required to pay Oitzinger at the attorney rate for many hours which should have been charged at the lower special master rate. Additionally, they argue that the enhancement adjustments to the lodestar and multipliers used by the district court are inappropriately applied to ombudsman fees even if the fees can be calculated using an attorney rate.

█ We, however, do not see any ombudsman issue in this case. Although the district court appointed Oitzinger as "ombudsman," in an earlier appeal of this case we made it clear that Oitzinger never assumed the role of ombudsman in the traditional sense of an objective "middleman" or referee between the parties, and lacked the broad powers of other court-appointed agents in prison litigation. *Alberti*, 790 F.2d at 1229–30. Oitzinger's role as ombudsman simply consisted of monitoring defendants' compliance with the consent judgment, an activity within his role as plaintiffs' attorney compensable under § 1988. *Miller*, 628 F.2d at 348; *see also Delaware Valley I*, 478 U.S. at 559, 106 S.Ct. at 3095 (noting that several circuits, including the Fifth Circuit, had held that "post-judgment monitoring of a consent judgment is a compensable activity for which counsel is entitled to a reasonable fee").

## V

In determining the reasonable hourly fee to be used in calculating the lodestar, the district court considered and quantified three components: (a) the customary hourly rate prevailing in the community for legal services rendered by attorneys of similar skill, experience, and reputation, 688 F.Supp. at 1190–91; (b) the economic impact resulting from preclusion of other employment due to the acceptance of the case and the time limitations imposed by the client or the circumstances, valued by the district court at $5.00 per hour, but applied

---

7. Oitzinger even claims 60.00 hours he expended investigating reports that incompetent counsel were routinely being appointed to represent indigent defendants.

8. Oitzinger claims over 1600 hours reading, listening to, or otherwise dealing with inmate complaints over the course of the litigation. We are unpersuaded that all 1600 hours, about one-fourth of the total time claimed by Oitzinger, were reasonably expended on the litigation and not excessive, duplicative, or unnecessary.

only during certain specific time-intense phases of the case, *id.* at 1189–90; and (c) the financial implications of the undesirability of the case, set at $5.00 per hour and applied only to so-called "merits" work performed before December 31, 1985, *id.* at 1198–99. The Commissioners Court and the Sheriff contend that these two enhancements of the customary hourly rate were an abuse of discretion.

■ The district court's enhancement of the customary hourly rate for preclusion of other employment and time limitations imposed by the case was an abuse of discretion. The district court based the enhancement on three facts: (1) that conflicts of interest caused by representing the plaintiff class precluded Oitzinger and Birnberg from representing certain other clients; (2) that time requirements of this case precluded Oitzinger and Birnberg from obtaining other clients; and (3) that an attorney who, like Birnberg, takes on a matter at the last minute generally receives a premium fee. However, that conflicts of interest preclude representing certain clients and that time requirements (time for which the attorney is compensated) prevent obtaining new clients are not bases for increasing the customary hourly rate in private practice and, therefore, are not proper bases for enhancing the customary hourly rate. Further, though it is true that an attorney may charge a premium for taking on a case at the last minute, a premium for a last minute entry into a case in which no class was certified for its first two years and is now sixteen years old is not appropriate.

■ The district court's enhancement of the customary hourly rate for case undesirability was also an abuse of discretion. Although the court noted testimony from previous defense counsel in the case that attorneys in private practice generally charge a higher than customary hourly rate in undesirable cases, the court failed to articulate any basis for the conclusion that this litigation was undesirable in a way relevant to compensation, and we fail to see any in the record.

We are persuaded that these enhancements of the customary hourly fee must be reversed.

## VI

The district court enhanced the lodestar award by 25% for services rendered by Oitzinger before July 5, 1978, and for services performed by Birnberg before July 2, 1976, to compensate them for the risk of non-payment of fees assumed by them when they undertook this case. The perceived risk was due to the absence of a fee-shifting statute before October 1976. The district court did not enhance for work performed after any doubt that Oitzinger and Birnberg could recover attorneys' fees was resolved by the passage of the Civil Rights Attorney's Fees Awards Act of 1976 and the determination in *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), that states and their instrumentalities could not successfully assert an eleventh amendment immunity defense to avoid paying attorneys' fees.

■ In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*Delaware Valley II*), the Supreme Court addressed awards of contingency enhancements. We recently noted that Justice O'Connor's concurrence was, effectively, the authoritative pronouncement of the Court. *See Islamic Center of Miss. v. Starkville, Miss.*, 876 F.2d 465, 471 (5th Cir.1989). Justice O'Connor articulated a two-part test for evaluating contingency enhancements, requiring fee petitioners to "establish that (1) 'without an adjustment for risk the prevailing party "would have faced substantial difficulties in finding [competent] counsel in the local or other relevant market," ' and (2) the market rate of 'compensation … for contingency fee cases *as a class*' was different from cases in which payment was certain, win or lose." *Id.* at 470–71 (quoting *Delaware Valley II*, 107 S.Ct. at 3089–91 (O'Connor, J., concurring in part and concurring in the judgment) (emphasis in original) (citation omitted)). Justice O'Connor reasoned that the guidance of a test which focused on com-

pensation in the local market was needed to insure that fee awards were calculated by district courts on a basis that was "not merely justifiable in theory but also objective and nonarbitrary in practice." *Delaware Valley II*, 107 S.Ct. at 3090.

The district court concluded that *Delaware Valley II* only applied to contingency enhancements based on the risk of not prevailing on the merits and that it did not apply to contingency enhancements based on the risk of non-payment of fees due to the lack of a fee-shifting statute. 688 F.Supp. at 1193. Accordingly, the district court did not make the findings required by Justice O'Connor's concurrence in *Delaware Valley II*. This was error. We see no principled basis for not applying *Delaware Valley II* in this case. Consequently, the contingency enhancement awarded by the district court must be vacated and the issue remanded for appropriate findings.[9]

### VII

The district court found that the lodestar should be adjusted upward for the exceptional results achieved by Oitzinger and Birnberg. 688 F.Supp. at 1197. Specifically, the court found three " 'exceptional' circumstances" justified the enhancement: (1) prevailing rates for attorneys did not account for the expertise possessed by Oitzinger and Birnberg concerning the complex issues involved in the litigation; (2) Oitzinger and Birnberg saved the defendant county money; and (3) the relief obtained was exceptional. *Id.* Consequently, the court concluded "that [Oitzinger's and Birnberg's] experience, reputation, skill, and ability played a significant role in [their] success in this litigation and the exceptional results reached by [them] merit an upward adjustment in order to produce a reasonable attorneys' fee." *Id.*

As noted earlier, the Supreme Court has specifically stated that the results obtained are presumed to be fully reflected in the lodestar and that the lodestar is presumed to be a reasonable fee. *Delaware Valley I*, 478 U.S. at 564–65, 106 S.Ct. at 3097–98; *Blum*, 465 U.S. at 898–900, 104 S.Ct. at 1548–1550; *see also Abrams v. Baylor College of Medicine*, 805 F.2d 528, 537 (5th Cir.1986). Enhancements based upon these factors are only appropriate in rare cases supported by specific evidence in the record and detailed findings by the courts. *Delaware Valley I*, 478 U.S. at 565, 106 S.Ct. at 3098.

▮ The district court asserted that the prevailing rates for attorneys of similar skill, experience, and reputation were not sufficient to compensate Oitzinger and Birnberg, but it articulated no basis for this finding, and we fail to see any in the record. The district court's enhancement for exceptional results must be reversed.

### VIII

In computing Oitzinger's and Birnberg's fees the district court used the hourly rates in effect at the time when services were rendered. Recognizing that "payment ten or fifteen years after the services were rendered at rates prevailing at the time the services were performed does not produce a fully compensatory fee," the court adjusted the lodestar to reflect the value of the delay in receipt of payment. 688 F.Supp. at 1194.

While admitting that the case law entitles prevailing counsel in a civil rights suit to compensation for delay in receipt of payment in an appropriate case, *Missouri v. Jenkins*, —— U.S. ——, 109 S.Ct. 2463, 2468–69, 105 L.Ed.2d 229 (1989), the Commissioners Court and the Sheriff argue that the district court abused its discretion in compensating Oitzinger and Birnberg for delay in payment because they failed to file attorneys' fees requests until 1985 even though the Civil Rights Attorney's Fees Awards Act was passed in 1976.

---

**9.** Oitzinger and Birnberg claim that the defendants waived their *Delaware Valley II* argument by not disclosing it in response to an interrogatory requesting defendants to detail the basis for their claim that a contingency enhancement

was not appropriate in this case. Defendants' response was: "This case does not qualify as complex litigation." The district court addressed this argument, however, so it is properly before us.

Although we are not comfortable with a nine year delay in submitting fee applications and doubt whether in the ordinary case an award for delay in payment is appropriate in light of this circumstance, in this case we must defer to the district court's factual finding, amply supported by the record, that counsel for defendants communicated to Oitzinger and Birnberg defendants' "threat to cease cooperating in the implementation of the substantive relief" if fees were requested. 688 F.Supp. at 1194. In light of this circumstance it would be unfair to deprive Oitzinger and Birnberg of compensation for delay in payment for their failure to file an interim attorneys' fees request at an earlier date. Also, defendants knew that Oitzinger and Birnberg planned on submitting fee applications and were not surprised by the fee applications.

## IX

The district court awarded Oitzinger and Birnberg fees for trial of the fee issues. The Commissioners Court and the Sheriff argue that the district court abused its discretion in making this award because Oitzinger's and Birnberg's initial claims were exorbitant and because the time spent on fee issues was unreasonable. They also contend that Oitzinger and Birnberg are not the prevailing parties on the attorneys' fees issues because they only got about two-thirds of their request.

In this circuit "[i]t is settled that a prevailing plaintiff is entitled to attorney's fees for the effort entailed in litigating a fee claim and securing compensation." *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir.1985); *see also Knighton v. Watkins*, 616 F.2d 795, 800 (5th Cir.1980); *Johnson v. State of Mississippi*, 606 F.2d 635, 637–38 (5th Cir.1979). "If the Plaintiffs' 'natural zeal' resulted in their expending more effort than reasonably necessary to establish and defend their fee claim, the district court may reduce the compensable number of hours accordingly." *Cruz*, 762 F.2d 1234. Also, "if the attorney's initial claims are exorbitant ..., the district court should

refuse the further compensation." *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978).

We do not agree that the district court abused its discretion in awarding Oitzinger and Birnberg fees accumulated in litigating the fees issues. Defendants rightly objected to various portions of the fee request, but the case law establishes that Oitzinger and Birnberg were entitled to respond to those objections and to be compensated for that time so long as their initial claims were not exhorbitant and their time claimed was reasonable. Although we have disagreed with portions of the award, we are not willing to say that Oitzinger's and Birnberg's initial fee claims were exorbitant. Also, the record reflects that the hours claimed are reasonable. Finally, we disagree that the Commissioners Court and the Sheriff were the prevailing parties in the fee litigation because the district court did not give Oitzinger and Birnberg the full amount they requested in their fee petition. Although the district court reduced several of the enhancements and adjustments, plaintiffs prevailed on virtually every contested issue in the litigation. In no real sense were the Commissioners Court and the Sheriff prevailing parties in the attorneys' fees litigation.

## X

The district court awarded Oitzinger and Birnberg approximately $20,000 in costs for the services of special counsel associated by them solely in connection with the fee litigation. The Commissioners Court and the Sheriff argue that this award was an abuse of discretion. The federal courts are unanimous in holding that the expenses reasonably incurred by a prevailing plaintiff's attorney in hiring special counsel to assist in the prosecution of the fee claim are fully compensable under § 1988. *See, e.g., Shadis v. Beal*, 703 F.2d 71, 73 (3d Cir.1983). Taxing such costs, however, is only appropriate if they are justified by the necessities of the case. *Jonas v. Stack*, 758 F.2d 567, 569 (11th Cir.1985).

The district court concluded that the association of special fee counsel was

justified by the necessities of the case. 688 F.Supp. at 1201. We concur. This case is uniquely complex and the request is for substantial fees. It was not an abuse of discretion for the district court to allow the limited association of special counsel by Oitzinger and Birnberg.

## XI

The district court, without explanation, used municipal bond interest rates to adjust the fee award to compensate for delay in receipt of payment. Oitzinger and Birnberg contend by cross-appeal that the municipal rate under-valued the cost of delay in receipt of payment and that the proper rate is the prime rate.

■ In the Seventh Circuit, "[d]elay in payment may be compensated in either one of two ways: (1) by using the attorneys' current rate ... or (2) by using historical rates plus a *prime rate enhancement.*" *Skelton v. General Motors Corp.,* 860 F.2d 250, 255 n. 5 (7th Cir.1988) (emphasis added), *cert. denied sub nom., General Motors Corp. v. Skelton,* —— U.S. ——, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); *see also Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.,* 874 F.2d 431, 436–37 (7th Cir.1989) (suggesting in trademark infringement case "that district judges use the prime rate for fixing prejudgment interest where there is no statutory interest rate" because it "is a readily ascertainable figure which provides a reasonable although rough estimate of the interest rate necessary to compensate plaintiffs not only for the loss of the use of their money but also for the risk of default"); *Lattimore v. Oman Constr.,* 868 F.2d 437, 438 n. 2 (11th Cir.1989) (approving use of "IRS adjusted prime rate" to compensate attorneys in Title VII case for delay in receipt of payment where historical rates were used in computing lodestar). Although we have not ruled on this issue, we have stated that the cost of borrowing money, which the prime rate represents, is an appropriate prejudgment interest rate in admiralty cases. *See In re M/V Vulcan,* 553 F.2d 489, 491 (5th Cir.), *cert. denied sub nom., Sabine Towing and Transportation Co. v. Zapata Ugland*

*Drilling Inc.,* 434 U.S. 855, 98 S.Ct. 175, 54 L.Ed.2d 127 (1977).

We now concur with the Seventh Circuit that the appropriate rate of interest to be used in computing a delay in payment adjustment is the cost of borrowing money, the prime rate. The figure used by the district court, the municipal bond rate, represents the amount the defendants saved by having the use of the money which should have been paid to plaintiffs' counsel. What should be taken into account in choosing an interest rate is "the fact that capital employed in the business of lawyering is like capital employed anywhere else. It carries a cost. And in economic terms that cost is the price of borrowed ... capital." *Lippo v. Mobil Oil Corp.,* 692 F.Supp. 826, 840 (N.D.Ill.1988). Consequently, the district court erred in not using the prime rate to calculate the cost of delay.

## XII

Oitzinger and Birnberg asked the district court for the expert witness fees they incurred in connection with litigation of jail staffing issues. *See Alberti v. Klevenhagen,* 606 F.Supp. 478 (S.D.Tex.1985). The district court refused to award Oitzinger and Birnberg the costs they incurred in excess of the amounts set forth in 28 U.S.C. § 1821 for non-court-appointed expert witnesses, relying upon our en banc decision in *International Woodworkers of America v. Champion Int'l Corp.,* 790 F.2d 1174 (5th Cir.1986) (en banc), *aff'd sub nom. Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). In *International Woodworkers* we held that non-court-appointed expert witness fees in excess of the amounts set forth in § 1821 may only be taxed as costs when expressly authorized by Congress or when one of three exceptions recognized in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257–59, 95 S.Ct. 1612, 1621–22, 44 L.Ed.2d 141 (1975), applies. Oitzinger and Birnberg acknowledge that *International Woodworkers* bars their recovery under § 1988, 790 F.2d at 1181, but argue they

can fit within one of the three *Alyeska* exceptions. They contend that the exception for actions in bad faith or willful disobedience of a court order applies, and ask us to tax the excess costs they incurred to the Commissioners Court and the Sheriff. The district court, however, made no findings about the applicability of the bad faith exception. Consequently, we decline to address this claim on appeal, but direct the court on remand to make appropriate findings.

### XIII

In sum, we hold that the district court abused its discretion in accepting in toto Oitzinger's claim for 6,652 hours, in adjusting the customary fee for Oitzinger and Birnberg upward for the preclusive effects of the litigation and case undesirability, in enhancing the lodestar for exceptional results, in enhancing the lodestar for contingency without making the findings required by Justice O'Connor's *Delaware Valley II* concurrence, and in using the municipal bond rate and not the prime rate. The district court also erred in not making findings about the applicability of the bad faith exception to Oitzinger's and Birnberg's claim for non-court-appointed expert witness fees in excess of the amounts set forth in 28 U.S.C. § 1821. We affirm the district court in all other respects. The district court on remand must recompute Oitzinger's and Birnberg's fee awards. The court should reexamine the reasonableness of the hours claimed by Oitzinger as review, conferences, and monitoring, reexamining not only the appropriateness of particular items claimed as compensable legal work in these categories, but also the reasonableness of the total hours Oitzinger claimed as review, conferences and monitoring. The court should also eliminate the improper enhancements, reconsider its contingency enhancement, compute delay in payment using the prime rate, and make findings about the applicability of the bad faith exception for payment of non-court-appointed expert witness fees.

REVERSED in part, AFFIRMED in part, and REMANDED.