## In re ALLIED RISER COMMUNICATIONS CORPORATION, Debtor.

No. 02–32607–SAF–7.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Aug. 8, 2002.

Greg Gordon, Jones, Day, Reaves & Pogue, Dallas, TX, for Alleged Debtor.

Mark Ralston, Munsch, Hardt, Kopf, Harr & Dinan, P.C., Dallas, TX, for Petitioning Creditors.

## MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Chief Judge.

Allied Riser Communications Corporation, the alleged debtor, moves the court for the recovery of its costs and attorney's fees pursuant to 11 U.S.C. § 303(i). The petitioning creditors oppose the motion.

On March 27, 2002, the petitioning creditors filed an involuntary petition seeking the entry of an order for relief against Allied Riser. Allied Riser opposed the petition and, on April 17, 2002, filed a motion to dismiss the petition. On May 29, 2002, the court conducted an evidentiary hearing on the motion to dismiss. On June 11, 2002, the court issued an oral ruling granting the motion to dismiss.

Allied Riser had requested recovery of its costs and attorney's fees under § 303(i). In its oral ruling on the motion to dismiss, the court directed that if Allied Riser elected to pursue the request, Allied Riser had to submit a brief, by June 28, 2002, addressing factors for the court to consider, together with the functional equivalent of a fee application filed under 11 U.S.C. § 303(a). The court gave the petitioning creditors until July 12, 2002, to file a response to Allied Riser's brief. Bench ruling transcript at 21.

Allied Riser filed its application and brief on July 1, 2002. The petitioning creditors filed their response on July 12, 2002. Allied Riser filed a reply with a supplement to the application on July 22, 2002.

The determination of an involuntary petition, including requests for attorney's fees under 11 U.S.C. § 303(i), constitutes a core matter over which this court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2)(A) and (O) and 1334(b). This memorandum opinion contains the court's findings of fact and conclusions of law. Bankruptcy Rules 7052 and 9014.

### Background

Allied Riser is a facilities-based provider of broadband communications services to small and medium-size businesses in the United States and Canada. Since June 1997, Allied Riser has constructed fiber optic broadband data infrastructures in office buildings to carry voice and data traffic and other communications services for a building's tenants. Allied Riser raised capital through various private equity financings and a public stock offering in October 1999. Thereafter, Allied Riser, pursuant to an indenture dated June 28, 2000, issued $150 million of 7.5% convertible subordinated notes due 2007. Allied Riser used and is using the proceeds of the notes to fund continuing operations and infrastructure construction costs.

Approximately $117 million of the notes remain outstanding. Allied Riser is current on its interest payments. No principal payments are due until 2007.

Effective February 4, 2002, Allied Riser merged with Cogent Communications Group, Inc. Cogent provides high-speed internet access and data communications to businesses, other telecommunications providers, application service providers, and internet service providers located in commercial office buildings in the central business districts of major cities.

In their involuntary petition, the petitioning creditors asserted that the outstanding $117 million of the notes are actually due and payable and that Allied Riser cannot pay that obligation. Allied Riser responded that the notes are not due and payable and that, as a result, Allied Riser is paying its obligations as they become

due. The petitioning creditors asserted that the noteholders have effectively accelerated the obligation to pay the principal of the notes. Allied Riser counters that the notes have not been effectively accelerated.

In its motion to dismiss, Allied Riser asserted that whether the notes have been effectively accelerated is subject to a bona fide dispute preventing the entry of an order for relief under 11 U.S.C. § 303(h). The petitioning creditors responded that applying the facts of the merger to the language of the note indenture agreement establishes the effectiveness of the acceleration.

The court conducted an evidentiary hearing on the motion to dismiss on May 29, 2002. As found in the court's bench ruling on the motion to dismiss, the indenture agreement protects the noteholders from a change of control of Allied Riser. When a change of control occurs, as provided in the indenture, each noteholder may require that Allied Riser repurchase the notes at 100% of the principal plus accrued interest. Forty-five days after the occurrence of the change of control, Allied Riser must give the noteholders notice of the change of control and of the right to repurchase the notes. If Allied Riser does not give the notice, an event of default occurs. When an event of default occurs, the principal amount of the outstanding notes may be declared due and immediately payable by providing written notice to Allied Riser.

The petitioning creditors contend that the Cogent merger resulted in a change of control and the notes have been effectively accelerated. Allied Riser counters that the merger did not trigger the right to accelerate the notes. For the reasons stated in the court's bench ruling, the court found that the change of control and, hence, the effectiveness of the acceleration,

was the subject of a bona fide dispute under § 303(h), requiring the dismissal of the petition.

Allied Riser had alternatively sought dismissal under 11 U.S.C. § 305. The court found that had an order for relief been entered, dismissal under § 305 would be appropriate under the circumstances of this case. The change of control issue is pending in litigation in the Delaware Chancery Court. The court reasoned that the Delaware court could efficiently adjudicate the change of control issue, while positioning the parties for a settlement.

The court anticipated that settlement discussions would focus on the tension between the emerging desire of the noteholders to preserve Allied Riser's cash from total dissipation in the depressed telecommunications market and Cogent's and Allied Riser's business plan. At the time of the hearing on the motion to dismiss, Allied Riser had approximately $60 million in cash but Cogent anticipated using the entire sum before Allied Riser would positively cash flow at the end of 2003.

**Discretion**

■ Section 303(i) provides "if the court dismisses a petition under this section . . . , and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment (1) against the petitioners and in favor of the debtor for (A) costs or (B) a reasonable attorney's fee." 11 U.S.C. § 303(i). A reasonable attorney's fee may include the attorney's expenses. *In re Petrosciences Int'l, Inc.,* 96 B.R. 661, 662 (Bankr.N.D.Tex.1988).

■ Section 303(i) grants the court discretion to award attorney's fees. Allied Riser argues that the statute presumes the award of attorney's fees, requiring the petitioning creditors to present evidence to rebut the presumption. Several courts have read the statute as Allied Riser sug-

gests. *See, e.g., In re Scrap Metal Buyers of Tampa, Inc.,* 253 B.R. 103, 109 (M.D.Fla.2000)(finding a rebuttable presumption); *In re Silverman,* 230 B.R. 46, 50–51 (Bankr.D.N.J.1998)(concluding that attorney's fees should generally be awarded to the prevailing debtor); *In re Landmark Distrib., Inc.,* 189 B.R. 290, 307 (Bankr.D.N.J.1995). These courts observe that a rebuttable presumption recognizes the onerous circumstances imposed on a debtor by the filing of an involuntary petition. While recognizing that concern, this court respectfully disagrees that § 303(i) of the Bankruptcy Code establishes a rebuttable presumption.

■ Absent a specific fee-shifting statutory or contractual authorization, federal courts apply the so-called "American Rule," which requires that each side in a lawsuit bear liability for its attorney's fees. *See, e.g., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247–50, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The Supreme Court taught in *Alyeska* that Congress had reserved for itself the task of determining when exceptions should be allowed to the American Rule. *Id.,* at 269, 95 S.Ct. 1612. Under the Bankruptcy Code, Congress has, in § 303(i), established an exception to the American Rule by granting the court discretion to award attorney's fees upon dismissal of an involuntary petition. The statute does not, however, provide anything more than a grant of authority. Federal courts may not alter that exception from a grant of discretion to a presumption of an award of attorney's fees. The court, therefore, does not presume the award of attorney's fees. Rather, the court, in the exercise of its discretion, determines whether attorney's fees should be awarded to Allied Riser. By relaxing the American Rule, the authorization to award attorney's fees, if circumstances warrant, protects the debtor. If the factors do not weigh in favor of an award of attorney's fees, the court should apply the American Rule. *See In re Charter Graphic Servs.,* 230 B.R. 759, 772 (Bankr.N.D.Tex.1998)(court must weigh factors to determine whether to award attorney's fees).

■ The petitioning creditors did not file the involuntary petition in bad faith. *In re Zadock Reid,* 854 F.2d 156, 160 (7th Cir.1988)(asserting that the presence or absence of bad faith will inform the exercise of the court's discretion under § 303(i)). The record contains no evidence that the petitioning creditors sought to harm Allied Riser. The petitioning creditors believed that the facts concerning securities registration immediately following the closing of the merger established their legal position. Further, the petitioning creditors sought to preserve Allied Riser's cash as well as certain avoidance causes of action under the Bankruptcy Code.

The reasonableness of the actions taken by the petitioning creditors and their motivations and objectives do not weigh in favor of awarding Allied Riser its attorney's fees. *In re Angelo Squillante,* 259 B.R. 548, 554 (Bankr.D.Conn.2001)(stating that the considerations under § 303(i) include the reasonableness of the petitioning creditors' actions and the motivations and objectives behind the filing of the petition). Allied Riser contends that the petitioning creditors engaged in forum shopping, seeking the bankruptcy court forum after the unsuccessful run in the Delaware Chancery Court at enjoining the merger. The petitioning creditors may have filed the petition, in part, as forum shopping, following the initial adverse ruling in the Delaware Chancery Court. However, invocation of the bankruptcy process following adverse litigation developments is not unusual. Had the state court decision gone in a different direction, Allied Riser

may have chosen the bankruptcy forum. Indeed, regardless of the ultimate outcome of the Delaware litigation, Allied Riser may yet have need of bankruptcy relief. Should that need arise, this court assumes that counsel for Allied Riser will advise Allied Riser on its choice of Congressionally authorized venues, that is, it will likely engage in its own forum shopping. The attempted invocation of the bankruptcy process after an adverse state court ruling does not, in and of itself, constitute grounds for an award of attorney's fees.

The petitioning creditors were motivated, in part, to preserve Allied Riser's $60 million in remaining cash, for distribution to the creditors on the outstanding $117 million of notes. Allied Riser concedes that, post merger, it will not have positive cash flow until the end of 2003, making efforts of creditors to preserve cash reasonable. Allied Riser raised cash from the sale of the notes for the purpose of using the cash to fund its operations. The note holders bought the notes knowing of that use and the correlative risk of Allied Riser being able to refinance the notes in the future. Nevertheless, Allied Riser's sector of the economy has virtually crashed. That development would reasonably cause investors to rethink the risks they originally agreed to assume and to seek to preserve a measure of a return on their investments. While the court questioned the effectiveness of the strategy prior to a Delaware court trial, the petitioning creditors' motivation does not support the award of attorney's fees. The court's weighing of the factors for abstention does not negate the reasonableness of the creditors' weighing factors to accomplish their legitimate objectives.

The court also weighs the merits of the petitioning creditors' view that the petition was proper and sustainable. *In re Landmark Distributors, Inc.*, 189 B.R. at 307.

The petitioning creditors argued that with the actual implementation of the merger, the change of control had occurred, which the court could determine on the written record. The petitioning creditors, therefore, argued that any bona fide dispute had been eliminated. Allied Riser disagreed. The court agreed with Allied Riser. But Allied Riser has submitted a fee request of $242,981 plus expenses, for basically a one day hearing with briefs. The magnitude of that request belies the argument that the petitioning creditors' view lacked merit.

Allied Riser suggested at the hearing on the motion to dismiss that the pendency of the involuntary petition would adversely effect its business. Cognizant of that position, the court expedited its decision on the motion to dismiss by rendering an oral ruling. But the court has no evidence to establish that any adverse effect actually occurred.

The resolution of the change of control issue in Delaware would have expeditiously brought the issue to a head, and, if the creditors prevailed, forced Allied Riser to make an informed decision about the need for a bankruptcy proceeding. Regardless of the bona fide dispute involuntary petition test, the change of control issue could have been resolved in state court without the need for the costs of defending against an involuntary petition. And, as the court observed in its bench ruling, the tension of the Delaware litigation provided a solid setting for a negotiated resolution.

Based on the above analysis of the circumstances of this case, factors favoring an award of attorney's fees (timely resolution in state court) are counter-balanced by factors weighing against an award of attorney's fees (reasonableness of petitioning creditors' action, motivation and objectives; lack of bad faith; no evidence of actual adverse effect on Allied Riser). As

426

the balance does not weigh in favor of fees, the court declines to award fees, applying, instead, the American Rule. For these reasons, the court denies the motion.

### Fee Analysis

■ In the event that an appellate court concludes that § 303(i) establishes a presumption in favor of awarding fees, this court concludes that the petitioning creditors rebutted the presumption based on the motivation to preserve cash in a failing market. This court would again weigh the factors as balanced, thereby applying the American Rule. In either event, should an appellate court conclude that this court abused its discretion in denying the motion, the court enters the following findings of fact and conclusions of law regarding the amount of reasonable attorney's fees. *Blockton Cahaba Coal Co. v. United States,* 24 F.2d 180, 181 (5th Cir.1928)(explaining "it was the duty of the trial court to make complete findings of fact upon all issues.").

The court required that Allied Riser submit the functional equivalent of a fee application presented to the court for determination of attorney's fees under 11 U.S.C. § 330(a). Allied Riser has submitted an application containing descriptions of work performed, the time spent in performance, and the charge for the performance. Allied Riser has not expressly stated the hourly rates of counsel, but the court may infer the rates from the time and charges. The petitioning creditors complain that the application does not comply with this court's Guidelines for Compensation and Expense Reimbursement for Professionals. General Order No. 00–7 (Bankr.N.D. Tex. Dec 21, 2000). Allied Riser responds that it need not comply with those guidelines as requests for attorney's fees under § 303(i) are not governed by the same standards as applica-

tions under § 330(a). *In re Wavelength, Inc.,* 61 B.R. 614, 621 (9th Cir. BAP 1986).

Although several of the expressed codified factors of § 330(a) do not necessarily apply, the fundamental analytical methodology of § 330(a) does apply and, hence, the court requires the underlying evidence to make the analysis. For that reason, the court required the functional equivalent of a § 330(a) application.

■ Section 303(i) authorizes the court, in the exercise of discretion, to award reasonable attorney's fees. Customarily, a federal court determines reasonable attorney's fees by applying a lodestar analysis, assessing the reasonable number of hours worked on a project times a reasonable hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Federal courts presume that the lodestar establishes a reasonable fee, although the court may make adjustments when required by specific evidence. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 553–54, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). Unless a statute provides a different methodology, for example, 11 U.S.C. § 328, federal courts apply the lodestar to determine reasonable attorney's fees across the federal statutory and civil procedure rule spectrum. *See, e.g., Strong v. BellSouth Telecomm., Inc.,* 137 F.3d 844, 850 (5th Cir.1998)(finding that lodestar applies to class actions); *Associated Builders & Contractors v. Orleans Parish Sch.,* 919 F.2d 374, 379 (5th Cir.1990)(concluding that lodestar applies to the Civil Rights Attorney's Fees Awards Act); *Brown v. Sullivan,* 917 F.2d 189, 192–93 (5th Cir.1990)(applying lodestar analysis to the Social Security Act); *Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 323–24 (5th Cir.1995)(lodestar analysis applies to attorney's fees derived from the Clayton Act

and RICO); *Alberti v. Klevenhagen,* 896 F.2d 927, 930 (5th Cir.1990), op. vacated in part on reh'g on other grounds, 903 F.2d 352 (5th Cir.1990)(asserting that the lodestar analysis applies to attorney's fees in civil rights case); *Longden v. Sunderman,* 979 F.2d 1095, 1099 (5th Cir.1992)(lodestar analysis applies to RICO attorney's fees). Even for a contingency fee, the court must perform a lodestar comparison to determine reasonableness. *See Brown v. Sullivan,* 917 F.2d at 192. Accordingly, the court applies a lodestar analysis to the application under § 303(i). Under the lodestar approach, Allied Riser bears the burden of establishing the reasonableness of its attorney's fees. *See Louisiana Power & Light Co.,* 50 F.3d at 324.

### Hourly rate

■ Allied Riser has not expressly delineated the hourly rates of the attorneys and paraprofessionals at Jones, Day, Reavis & Pogue, the firm that has represented Allied Riser in this case. The court infers those rates from the application. Jones Day has charged a blended hourly rate of $275.33. The court takes judicial notice that it has found, during the past year, blended rates for comparable law firms ranging from $192 per hour to $286 per hour to be reasonable. The court therefore finds that the Jones Day blended hourly rate is reasonable. *Missouri v. Jenkins,* 491 U.S. 274, 286, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989).

■ Having assessed the reasonableness of the blended rate, the court does not determine the reasonableness of any person's rate. The court accepts that Jones Day assigned an experienced bankruptcy practitioner as lead counsel. He commands an hourly rate of $550. That substantial rate can only be justified by a corresponding knowledge and experience that necessarily reduces the amount and costs of supporting work done under his direction. The court categorizes, for analytical purposes, the supporting attorney work into two groups, one at an hourly rate of $225, and the other at an hourly rate of $155, which is reflected by the hourly rate of the bulk of the supporting work reported in the application. The court, drawing from its own work experience and practice, applies its expectations of what attorneys at those hourly rates should be able to accomplish based on their knowledge and experience.

### Services Rendered

With those rates, the court analyzes the services rendered, to determine the reasonable number of hours for a project. The court excludes time associated with the change of control issue, as Allied Riser must litigate that bona fide dispute. That is, as the dispute is bona fide, it must be adjudicated. Since it must be adjudicated, the legal fees for that litigation must be incurred. That Jones Day incurred the work now, rather than when the Delaware court calls the case to trial, matters not. Time spent on that dispute cannot be applied to the attorney's fees for resolution of the involuntary petition. *In re Atlas Mach. and Iron Works, Inc.,* 190 B.R. 796, 803 (Bankr.E.D.Va.1995) (fees should be limited to work performed defending against the petition); *In re K.P. Enter.,* 135 B.R. 174, 178 (Bankr.D.Me.1992)(recovery limited to costs of defending against the involuntary petition). By excluding that work from consideration, the court does not comment on the reasonableness of the fees associated with that work. Relatedly, counsel may have performed that work at this time at Allied Riser's request. Regardless of what Allied Riser and its counsel agreed to concerning payment for those services, the court must determine the reasonableness of services

pertaining to the involuntary petition. *See Brown v. Sullivan,* 917 F.2d at 192.

■ The court also excludes time coordinating work within the firm, as well as time pertaining to organizing work and schedules. At the hourly rate of lead counsel and at the blended rate of the application, that work must be subsumed with the hourly rate. Lawyers at $550 an hour cannot be charging clients to coordinate the work of their subordinates, and officers of a corporation should, consistent with their duties and obligations to the corporation, question counsel if he actually billed for that work. Indeed, in the exercise of reasonable billing judgment mandated by the Supreme Court, those matters should not be charged to the client. In addition, the attorney should exclude hours that are excessive, redundant or otherwise unnecessary. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. A reading of the application reveals that reasonable billing judgment has not been applied. The court has therefore performed that function.

Based on chart A attached to this memorandum opinion, the court finds the time (and corresponding value) for the following projects reasonable: response to the petition; scheduling and pretrial orders and conference; discovery other than depositions; depositions; recusal; ruling; and fee application.

In addition, the court finds that counsel would reasonably incur 8.5 hours of work at $225 per hour compiling Delaware litigation related matters for use in the motion to dismiss. That totals $1,912.50. While the change of control and associated work cannot be included, synthesizing the change of control work for use in the motion to dismiss would be reasonable. The court may determine reasonable hours to perform a particular necessary task. *Louisiana Power & Light Co.,* 50 F.3d at 323–24.

■ The court finds, however, that the time billed for the motion to dismiss with the supporting brief, the reply to the petitioning creditors' response to the motion to dismiss, and the hearing on the motion with preparation time excessive. In performing the lodestar analysis, the court is not required to accept counsel's time expended as reasonable, but must, instead, determine the reasonableness of particular times. *Id.* Again, in its analysis, the court is guided by the knowledge and experience of an attorney who commands an hourly rate of $550.

For the motion to dismiss with supporting brief, Jones Day reports 51.75 hours which the court categorizes at the $225 per hour rate and 32.5 hours at the $155 per hour rate, in addition to 8.25 hours at $550 per hour. Research by support attorneys should not have taken more than 32 hours split between the two categories of support attorneys, and drafting time should not have taken more than 24 hours at $225 per hour. With the 8.25 hours of lead counsel, the total for that project should not exceed $16,017.50. See chart B.

For the reply, support attorneys spent 52 hours of time on work that should not have exceeded 32 hours in time. As calculated on chart B, the court finds that project should not exceed $11,177.50. Finally, for the hearing, lead counsel spent 20.75 hours. With his experience and knowledge, his support work for preparing for the hearing should not have exceeded 16 hours, with his backup at the hearing at 12 hours. As calculated on chart B, the hearing should not exceed $16,732.50.

Based on the foregoing, as summarized on chart C, the court finds reasonable attorney's fees to be $77,786.25.

### Expenses

In the application, as supplemented, Allied Riser requests reimbursement of at-

torney's expenses of $12,193.44. The application does not delineate the expenses between the change of control dispute and the motion to dismiss. The petitioning creditors calculate that approximately 60 percent of the work covers the change of control issue and, accordingly, recommend that the court use that factor to separate the expenses. Allied Riser offers no alternative approach. The court therefore adopts the petitioning creditors' recommendation and finds reimbursable expenses to be $4,877.38.

### Order

Based on the foregoing, the court will enter an order denying the motion. Should an appellate court determine that this court abused its discretion in declining to award Allied Riser attorney's fees under 11 U.S.C. § 303(i), this court would award reasonable attorney's fees of $77,786.25 and expenses of $4,877.38.

### ATTACHMENT
#### CHART A

| Project | Time | Rate | Subtotal | Fee |
|---|---|---|---|---|
| Response | 1.5 | $550 | | $ 825.00 |
| Scheduling | 5.0 | 550 | $2,750.00 | |
| Conf/Order | 17.0 | 225 | 3,825.00 | 6,575.00 |
| Discovery | 6.25 | 550 | 3,437.50 | |
| (except | 9.25 | 225 | 2,081.25 | |
| depositions) | 3.0 | 155 | 465.00 | 5,983.75 |
| Depositions | 19.0 | 550 | | 10,450.00 |
| Recusal | .5 | 550 | | 275.00 |
| Ruling | 3.0 | 550 | 1,650.00 | |
| | 1.5 | 225 | 337.50 | 1,987.50 |
| Fees | 26.0 | 225 | | 5,850.00 |
| TOTAL | | | | $31,946.25 |

#### CHART B

| Project | Time Billed | Time Allowed | Rate Allowed | Subtotal | Fee |
|---|---|---|---|---|---|
| Mtn to | 8.25 | 8.25 | $550 | $ 4,537.50 | |
| dismiss | 51.75 | 40.0 | 225 | 9,000.00 | |
| w/ brief | 32.5 | 16.0 | 155 | 2,480.00 | $16,017.50 |

| | | | | | |
|---|---|---|---|---|---|
| Reply | 8.25 | 8.25 | 550 | 4,537.50 | |
| | 39.5 | 24.0 | 225 | 5,400.00 | |
| | 13.0 | 8.0 | 155 | 1,240.00 | 11,177.50 |
| Hearing | 20.75 | 20.75 | 550 | 11,412.50 | |
| | 25.50 | 14.0 | 225 | 3,150.00 | |
| | 18.0 | 14.0 | 155 | 2,170.00 | 16,732.50 |
| TOTAL | | | | | $43,927.50 |

#### CHART C
#### Summary

| | |
|---|---|
| Chart A total | $31,946.25 |
| Delaware memo | 1,912.50 |
| Chart B total | 43,927.50 |
| | $77,786.25 |