John J. RILEY, American Family Radio, a division of American Family Association, Inc., and USA Radio Network, Inc., Plaintiffs,

v.

CITY OF JACKSON, MISSISSIPPI, Jimmy L. Wilson, Chief of Police, and Gwen Harmon, Public Information Officer, Defendants.

No. CIV.A. 3:93–CV–618WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

Sept. 26, 1997.

Stephen M. Crampton, American Family Association Law Center, Nathan W. Kellum, American Family Association Law Center, Tupelo, MS, for Plaintiffs.

Terry Wallace, William A. Gowan, Office of the City Attorney, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court on remand from the United States Court of Appeals for the Fifth

Circuit is the motion of the plaintiffs in the above styled and numbered cause for attorney fees and expenses brought pursuant to Title 42 U.S.C. § 1988, Civil Rights Attorneys Fees Awards Act of 1976.[1] Also before the court is a motion submitted by the plaintiffs for sanctions pursuant to Rule 11[2] of the Federal Rules of Civil Procedure. Jurisdiction over this matter is predicated on Title 28 U.S.C. §§ 1331[3] and 1343.[4] Having reviewed the plaintiffs' fee application, this court has calculated the number of hours reasonably expended on the case and has assigned a reasonable hourly rate for the services of the plaintiffs' attorneys. An appropriate attorney fee has been awarded which includes fees for preparation of the fee application; for time expended on appeal of this matter; and for travel time. The plaintiffs' motion for imposition of sanctions, not submitted in accordance with the Federal Rules of Civil Procedure, is not well taken and is hereby denied.

## I. BACKGROUND

This matter previously was before the court pursuant to the plaintiffs' motion for attorney fees and expenses under Title 42 U.S.C. § 1988 which authorizes district courts to award reasonable attorney's fees to prevailing parties in civil rights cases. See

Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). The dispute arose from Operation Rescue anti-abortion activities staged in Jackson, Mississippi between July 9 and July 18 of 1993. The City of Jackson's Police Department undertook to implement security measures which included certain guidelines and policies directed at persons working with the various news media covering the event. These guidelines required media personnel to cooperate with the police and, in particular, to refrain from impeding access to a private driveway leading to an abortion clinic targeted for the event. Briefings concerning these and other matters were conducted by the City of Jackson Police Department on July 9 and July 10 of 1993. The police issued to media personnel security badges and armbands so that they could move in and out of the restricted area without taking up police officers' time with the process of identification. According to the City of Jackson, John J. Riley one of the plaintiffs herein, who at that time was employed by American Family Radio, participated in these briefings and was given a badge and armband. Riley, however, denies that he was informed of any policies or procedures regarding the recommended conduct for members of the media.

According to the City of Jackson, on July 14, 1993, Riley engaged in conduct which interfered with police security by "jumping

---

1. Title 42 U.S.C. § 1988 provides in pertinent part that, "[i]n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VII of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

2. Effective December 1, 1993, the amended Rule 11 now provides in pertinent part as follows: (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
 (1) How Initiated.
 (A) By Motion. *A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court*

*unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.* If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees. (emphasis added)

3. The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.

4. (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

police barricades and badgering clinic personnel." Gwen Harmon, a defendant herein who then was the Public Information Officer for the City of Jackson, confiscated Riley's badge and armband. Upon relinquishing his badge and armband under protest, Riley sought legal assistance regarding this matter from the American Family Association Law Center (hereinafter "the Law Center"). The Law Center immediately forwarded a letter to Chief Jimmy Wilson, at that time the Chief of Police for the City of Jackson, and informed Wilson that, in the Law Center's view, the summary confiscation of Riley's badge and armband by Gwen Harmon violated Riley's right to gather and report news, thereby violating his freedom of speech rights under the First Amendment[5] to the United States Constitution; and his right to be accorded due process under the Fourteenth Amendment[6] of the United States Constitution. The Law Center demanded that the badge and armband be returned to Riley forth-with, or the Law Center would file a lawsuit pursuant to Title 42 U.S.C. § 1983[7] in federal court naming Chief Wilson, the City of Jackson, and the City of Jackson Police Department as defendants. On July 15, 1993, Chief Wilson responded with a letter explaining the City of Jackson's reasons for taking action against Riley. After Chief Wilson's letter to the Law Center, the matter rested until October 6, 1993, when, in conjunction with a press conference, the instant complaint was filed.

The Law Center's complaint, filed on behalf of the plaintiffs John J. Riley and his employers American Family Radio and USA Radio Network, Inc., named the City of Jackson, Chief Wilson and Gwen Harmon as defendants. The plaintiffs' complaint sought declaratory and injunctive relief regarding the action taken against Riley by the defendants, as well as compensatory damages, punitive damages, costs and attorney fees. The defendants answered and submitted dispositive motions, asking that discovery be held in abeyance pending determination of the qualified immunity issue. The plaintiffs spent considerable time in opposition to this motion, but did not succeed in their efforts to have the motion denied. On March 10, 1994, the United States Magistrate Judge stayed discovery until such time as the defendants' summary judgment motion was resolved. The plaintiffs pursued an objection to the Magistrate Judge's ruling which limited discovery only to matters involving the defendants' claims of qualified immunity. Meanwhile, this court denied the defendants' motion to dismiss or for summary judgment on April 28, 1994 and the matter was set for trial. The plaintiffs thereafter pursued full discovery.

The parties say that they began to discuss settlement after the defendants' dispositive motions were denied. According to a letter from the Law Center to counsel for the City of Jackson, the plaintiff(s) were willing to settle the matter for $31,500.00 in attorney fees not later than June 1, 1994. However, according to the City of Jackson, the plaintiffs would accept no less than $50,000.00 in attorney fees after that date. Eventually, the parties agreed to settle this case by entering into a Stipulated Judgment in favor of the plaintiffs. The Stipulated Judgment stated that the plaintiffs were prevailing parties for the purposes of Title 42 U.S.C. § 1983, and declared that the actions of the

---

**5.** The First Amendment of the United States Constitution, states in pertinent part that "Congress shall make no law ... abridging freedom of speech ...."

**6.** The Fourteenth Amendment provides in pertinent part that, "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

**7.** Title 42 U.S.C. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

defendants were unconstitutional. Furthermore, the Judgment provided that the City of Jackson would be enjoined from enforcing the media policies and guidelines adopted for Operation Rescue; and that the plaintiff John J. Riley would receive nominal damages. The Stipulated Judgment was entered on September 20, 1994.

The injunctive relief feature of the Stipulated Judgment applied to media policies which ceased to be operative after July of 1993. The plaintiffs relinquished their claims for compensatory and punitive damages. The parties reached no agreement on the matter of attorney fees other than to declare that the plaintiffs had prevailed.

On October 4, 1994 the plaintiffs filed a motion for attorney fees in the amount of $84,320.00 plus expenses in the amount of $2,057.00. The defendants objected to the amount of attorney fees requested by the plaintiffs, contending that the amount was excessive. According to the defendants' argument, the plaintiffs did not succeed on the issues of compensatory and punitive damages. Moreover, argued defendants, the declaratory and injunctive relief obtained by the stipulated judgment had no prospective effect.[8] Thus, argued defendants, any fee awarded by this court should be significantly less than what the plaintiffs requested. This court agreed with the defendants, finding that, while the plaintiff Riley may have obtained a moral victory on the issue of whether the media guidelines and policies adopted for Operation Rescue by the City of Jackson were violative of the First and Fourteenth Amendments, he obtained only nominal damages and received no compensatory damages or punitive damages, two significant claims in the overall litigation of this matter. Moreover, this court found that the declaratory and injunctive relief obtained applied only to policies temporarily in effect in July of 1993. Thus, this relief did not directly benefit the plaintiff Riley or any of the other plaintiffs at the time of the judgment or settlement. Following *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), this court found that the recipient of a nominal damage award may be denied an award of attorneys' fees altogether even though he is a "prevailing party" under the statute. Taking its instruction from *Farrar,* this court noted that a plaintiff must obtain at least some relief on the merits of his claim which directly benefits him at the time of the judgment or settlement. This court noted additionally the Fifth Circuit's view that a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. *Salley v. St. Tammany School Board,* 57 F.3d 458, 467 (5th Cir. 1995); *Craig v. Gregg County, Texas,* 988 F.2d 18, 20 (5th Cir.1993), citing *Farrar v. Hobby,* 113 S.Ct. at 573. This court concluded that the plaintiffs had not benefitted directly from the award of injunctive relief agreed to in the Stipulated Judgment; had not prevailed on their claims for private damages and punitive damages; and that the amount and nature of damages awarded, nominal damages in the amount of one dollar, enabled the court lawfully to award low fees or no fees without reciting the 12 factors bearing on reasonableness; *see Hensley,* 461 U.S., at 430, n. 3, 103 S.Ct. 1933; and *Farrar v. Hobby,* 113 S.Ct. at 575. Thus, this court awarded a low fee based on what this court perceived to be the plaintiffs' very limited success—$2,500.00 in fees and costs in the amount of $329 .76. The plaintiffs appealed.

## II. THE DECISION OF THE COURT OF APPEALS

The United States Court of Appeals for the Fifth Circuit held that the parties' settlement was not merely a "technical victory" under *Farrar* as this court had concluded, and that this court's decision under *Farrar* to forego reciting its specific lodestar analysis was reversible error.[9] The Court of Appeals

---

**8.** The City of Jackson says the plaintiffs now are attempting to regain their lost claim for punitive damages by convincing this court that they are entitled to a large attorney fee award. This court is mindful of the authority which says that an award of attorney fees "is to be used as an incentive for the private enforcement of constitutional rights, not as a shill for the imposition of punitive damages." *Leroy v. City of Houston,* 831 F.2d 576, 585 (5th Cir.1987).

**9.** *See Riley v. City of Jackson, Mississippi,* 99 F.3d 757 (5th Cir.1996).

directed this court to redetermine its award of attorneys' fees and to recite in its findings the relevant lodestar factors enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The twelve *Johnson* factors are as follows: (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. The Fifth Circuit concluded that the plaintiffs achieved more than the type of "technical victory" won by the plaintiff in *Farrar* because, in the Fifth Circuit's view, the plaintiffs requested first and foremost injunctive relief and secondarily monetary damages. Thus, according to the Fifth Circuit, the plaintiffs were, for the most part, successful in obtaining the relief they sought. Citing *Farrar*, 506 U.S. at 121, 113 S.Ct. at 578, the Fifth Circuit concluded that the plaintiffs' nominal recovery on behalf of Riley did not derogate from the importance of the plaintiffs' victory. Otherwise, the Fifth Circuit concluded that *Farrar* was not controlling authority in the instant case.

As previously noted, the Fifth Circuit directed this court specifically to recite the "lodestar method" used to calculate attorneys' fees by setting forth its examination of the factors set out in *Johnson v. Georgia Highway Express, Inc. See Cobb v. Miller*, 818 F.2d 1227, 1232 (5th Cir.1987) (defining the "lodestar" method as (1) ascertaining the nature and extent of the services supplied by the attorney; (2) valuing the services according to the customary fee and quality of the legal work; and (3) adjusting the compensation on the basis of any other *Johnson* factors that may be of significance). The Fifth Circuit noted that this court's *Johnson* analysis need not be meticulously detailed, but should articulate and clearly apply the *Johnson* criteria. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331 (5th Cir.), cert.

denied, 516 U.S. 862, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995). The Fifth Circuit notes that the *Johnson* criteria should be applied flexibly, and that district courts are not required to parrot the twelve factors. *Copper Liquor Inc. v. Adolph Coors Co.*, 624 F.2d 575, 581, 583 (5th Cir.1980), *reh'g en banc*, 684 F.2d 1087 (5th Cir.1982).

Then, said the Fifth Circuit, once the lodestar is computed by multiplying the reasonable number of hours by a reasonable hourly rate, the lodestar may be adjusted upward or downward depending on the analysis of the twelve *Johnson* factors. *Louisiana Power & Light Co.*, 50 F.3d at 324; *United States Leather, Inc. v. H & W Partnership*, 60 F.3d 222, 229 (5th Cir.1995) (district court has the sound discretion to reduce the amount of an attorneys' fee award; however, this discretion is limited by *Johnson*).

The Fifth Circuit agreed with this court that some of the attorneys' fees claimed by the plaintiffs were repetitive and duplicative, particularly the plaintiffs' claims for time spent engaged in "intraoffice conferences." Additionally, the Fifth Circuit agreed that the plaintiffs' claim of $9,500.00 for preparation of the plaintiffs' fee application was excessive. This court found that the plaintiffs' claim of an additional $9,500.00 for preparation of the plaintiffs' fee request was unsubstantiated and lacking in credibility because, in essence, the plaintiffs were asserting that it took one attorney billing at a rate of $200.00 per hour nearly 50 hours to process and finalize the plaintiffs' fee request. The Fifth Circuit shared this court's concern, but noted that such time nevertheless is compensable, citing *Cruz v. Hauck*, 762 F.2d 1230, 1233–35 (5th Cir.1985).

Finally, the Fifth Circuit directed this court to clarify what fee should be permitted for the plaintiffs' travel time. The case is now remanded for this court to evaluate and explain each of these matters, as well as the *Johnson* factors, and to determine an appropriate award of attorneys' fees in this case.

### III. OVERVIEW OF THE LODESTAR ANALYSIS

#### a. Prevailing Party

Title 42 U.S.C. § 1988 limits fee awards to the "prevailing party," that is, one

who has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit and who is "able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Association v. Garland Independent School District,* 489 U.S. 782, 791–93, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989); *Bode v. United States,* 919 F.2d 1044, 1052 (5th Cir.1990). The United States Court of Appeals for the Fifth Circuit employs a very generous definition of what constitutes a prevailing party. *See E.E.O.C. v. Clear Lake Dodge,* 25 F.3d 265, 272 (5th Cir.1994) (referring to the Fifth Circuit's definition of a prevailing party as a "generous formulation" of the term). "A typical formulation is that 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *E.E.O.C. v. Clear Lake Dodge,* 25 F.3d, at 272 n. 8, citing *Hensley v. Eckerhart,* 103 S.Ct. 1933, at 1939. Prevailing parties are entitled to attorney's fees under § 1988 for time spent establishing and litigating a fee claim as well as for time spent prosecuting the merits of the civil rights action. *Johnson v. State of Mississippi,* 606 F.2d 635, 637–38 (5th Cir.1979). Furthermore, prevailing plaintiffs ordinarily recover attorney's fees pursuant to § 1988 unless there are special circumstances which would render such an award unjust. *Cruz v. Hauck,* 762 F.2d, at 1233, citing *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). The Fifth Circuit has interpreted this to mean that "absent special circumstances, a prevailing plaintiff should be awarded section 1988 fees as a matter of course." *Kirchberg v. Feenstra,* 708 F.2d 991, 998 (5th Cir.1983). Even though the final sentence of § 1988 provides that, "[i]n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs (emphasis added)," this court's discretion to award no fee whatsoever to a prevailing party is very narrow. *See Ellwest*

*Stereo Theatre, Inc. v. Jackson,* 653 F.2d 954, 955 (5th Cir.1981).

Notwithstanding the Fifth Circuit's generous formulation of the term "prevailing party," there are still circumstances where a plaintiff who formally "prevails" should receive no attorney's fees at all. One such circumstance would be when a private attorney is pursuing the same litigation and the same claims being pursued by government attorneys in simultaneous litigation. *E.E.O.C. v. Clear Lake Dodge,* 25 F.3d, at 272, citing *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, at 575. Another circumstance would be where the plaintiff pursues a very large private damages claim, but succeeds only in obtaining nominal damages—as was the case in *Farrar.*

In the instant case the plaintiffs always have been regarded as prevailing parties. The fee previously awarded the plaintiffs by this court was lower than requested due to this court's view that the plaintiffs obtained only limited success. However, the Fifth Circuit has held that the plaintiffs' injunctive relief obtained pursuant to the Stipulated Judgment entered into between the parties in this case constituted more than a mere technical victory. Thus, this court must redetermine what would constitute an appropriate fee in the instant case. Nevertheless, the United States Supreme Court has held that this court has a duty to evaluate the magnitude of the result, even if there is a finding that the result was significant. *Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 331 (5th Cir.1995), citing *Hensley,* 103 S.Ct. at 1942–43 (a reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole).

### b. *The Fee Award Must Not Produce a Windfall*

Fee awards under § 1988 were never intended to produce windfalls to attorneys. *E.E.O.C. v. Clear Lake Dodge,* 25 F.3d, at 273 n. 10, citing *Farrar v. Hobby,* 113 S.Ct., at 575. Thus, the goal of the district court is always to strike a delicate balance by awarding fees adequate to attract competent counsel, but which do not produce windfalls. *Id.; Islamic Center of Mississippi, Inc. v. City of*

*Starkville, Mississippi,* 876 F.2d 465, 472 (5th Cir.1989).

### c. *The Time and Labor Required*

██ It is the fee applicant who bears the burden of proving that the number of hours representing the labor required, as well as the hourly rate for which compensation is requested, is reasonable. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). *See Von Clark v. Butler,* 916 F.2d 255, 258 (5th Cir.1990) (plaintiff entitled to fees only for those hours reasonably expended); *Blanchard v. Bergeron,* 893 F.2d 87, 89 (5th Cir.1990) (focusing on whether the expenditure of time represented reasonable billing judgment, given the circumstances of the case, citing *Hensley,* 103 S.Ct. at 1939–40); *Nash v. Chandler,* 848 F.2d 567, 573 (5th Cir.1988) (the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation). The determination of whether the applicant's reported hours are repetitive and duplicative is a finding of fact by the district court and will not be disturbed unless clearly erroneous. *Cooper v. Pentecost,* 77 F.3d 829 (5th Cir.1996); *Associated Builders & Contractors of La., Inc. v. Orleans Parish School Board,* 919 F.2d 374, 379 (5th Cir. 1990).

██ The fee applicant has the burden of presenting adequate documentation of the hours reasonably expended. *Kellstrom,* 50 F.3d at 324. If the documentation of the hours claimed is "vague or incomplete," the district court may reduce or eliminate those hours. *Id.* (emphasis omitted). However, the Fifth Circuit is mindful that practical considerations of the daily practice of law in this day and age preclude "writing a book" to describe in excruciating detail the professional services rendered for each hour or fraction of an hour. Furthermore, says the Fifth Circuit, in this era of computerized time-keeping, many data processing programs limit the amount of input for any given hourly or daily entry. *Kellstrom,* 50 F.3d at 327.

In addition to vagueness, inadequacy of the justification for the fee applicant's expense may be an indication that the expense is not reasonable and may require reduction of the hours claimed. Recently, in the case of *League of United Latin American Citizens No. 4552 (LULAC) v. Roscoe Independent School District,* 119 F.3d 1228, 1234 (5th Cir.1997), the Fifth Circuit, citing *Hensley,* 103 S.Ct. at 1939–40, approved a district court's finding that time spent amending a complaint was not compensable because the amendment was necessary to comply with the basic rules of pleading jurisdictional allegations and that, "[a] reasonable attorney would have drafted the complaint correctly the first time." Furthermore, in *Cooper v.. Pentecost,* 77 F.3d 829 (5th Cir.1996), the Fifth Circuit upheld this court's finding that twenty-five hours submitted by counsel for preparing a list outlining areas of non-compliance with a consent decree was an unreasonable amount of time to be spent on such a task. *Id.,* at 832.

So, as the *Hensley* Court has stated, "[t]he district court . . . should exclude from its fee calculation any hours not 'reasonably expended.'" The hours surviving this process are those reasonably expended on the litigation. *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir.1993).

### d. *Novelty, Difficulty and Attorney Skill*

The *Johnson* opinion recognizes the commonsense proposition that easier and more routine matters take less time to prepare than do cases that present novel, difficult questions. *See Johnson,* 488 F.2d, at 717–18. Similarly, it is also reasonable to assume that a more experienced attorney will take less time to accomplish a routine task than will a novice. *See League of United Latin American Citizens No. 4552 (LULAC) v. Roscoe Independent School District,* 119 F.3d, at 1234.

Furthermore, the Fifth Circuit has stated that it is appropriate to distinguish between legal tasks that plainly require an attorney's skill, and other tasks such as investigation, clerical work, compilation of facts and statistics, work which often can be accomplished by non-lawyers but which a lawyer may do because he has no other help available, or simply because the lawyer may desire to perform a specific task. The Fifth Circuit recognizes that such work not requiring the skill of an attorney, but which an attorney nevertheless may perform, may command a

lesser rate. *Cruz v. Hauck,* 762 F.2d at 1235.

### e. *Preclusion of other Employment*

This factor involves conflicts of interest which may arise from representation and the time the representation in question may take away from the attorney for other opportunities. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 718. Few Fifth Circuit decisions deal in any depth with this factor. However, district court cases note that as a general matter the "preclusion from accepting other employment" factor is more appropriate when considering an increase in or enhancement of the lodestar amount. *See Migis v. Pearle Vision, Inc.,* 944 F.Supp. 508 (N.D.Tex.1996).

### f. *Customary Fee—Attorney Experience, Reputation, and Ability—Awards in Similar Cases*

 At least two of the *Johnson* factors are relevant in determining a reasonable rate of compensation. They are: (1) the experience, reputation and ability of counsel; and (2) the customary fee for similar work in the community. *Shipes v. Trinity Industries,* 987 F.2d 311, 319 (5th Cir.), *cert. denied,* 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993); *Alberti v. Klevenhagen,* 896 F.2d 927, 930 (5th Cir.), *vacated in part,* 903 F.2d 352 (5th Cir.1990). Also, where appropriate, the court will consider awards of fees in similar cases.

 When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. When that rate is not contested, it is prima facie reasonable. *Associated Builders & Contractors of La., Inc. v. Orleans Parish School Board,* 919 F.2d 374, 379 (5th Cir. 1990) citing *Islamic Center of Mississippi, Inc. v. City of Starkville, Mississippi,* 876 F.2d at 465, 469 (5th Cir.1989). Furthermore, fees are calculated at the prevailing market rates in the relevant community. *See Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). If, from the range of market rates invariably submitted by the parties, the court chooses an hourly rate different from the attorney's cus-

tomary billing rate, it must articulate its reasons for doing so. *Islamic Center,* 876 F.2d, at 468, citing *Black Grievance Committee v. Philadelphia Electric Company,* 802 F.2d 648, 652–53 (3rd Cir.1986), *vacated and remanded on other grounds,* 483 U.S. 1015, 107 S.Ct. 3255, 97 L.Ed.2d 754 (1987). The district court's selection of a reasonable rate, if such a selection is made by the court, is reviewed for clear error. *See Kellstrom,* 50 F.3d at 324.

 Finally, the matter of awards in similar cases arises when the court considers whether enhancement of the lodestar is justified in order to bring an award into conformity with fee awards granted in similar litigation. *See Herdahl v. Pontotoc County School District,* 964 F.Supp. 1113, 1119 (N.D.Miss.1997) (where no evidence is presented to show that awards in similar cases warrant an enhancement of the lodestar, this factor does not justify any adjustment to the lodestar).

### g. *Time Limitations Imposed by Client or Circumstances*

 The consideration of any time limitations imposed by the client or by circumstances ordinarily comes into play when determining whether an enhancement of the lodestar amount is justified. *See Alberti v. Klevenhagen,* 896 F.2d 927, 934 (5th Cir. 1990). The *Johnson* Court stated that this factor is particularly important when a new counsel is called in to prosecute the appeal or handle matters at a late stage in the proceeding. *Johnson v. Georgia Highway Express,* 488 F.2d at 718; *In re Combustion, Inc.,* 968 F.Supp. 1116, 1137 (W.D.La.1997). These circumstances are not present in the instant case.

### h. *Amount Involved and the Results Obtained*

 Generally, where the plaintiff recovers most, if not all, of the amount claimed or of the relief sought, the results obtained may be classified as excellent. The court is to consider the amount of damages, back pay awards (if applicable), injunctive relief and the effect of the court's decision on the law. If the decision corrects a discriminatory or

other unconstitutional circumstance which affects a large class of citizens, then the fee should reflect the relief obtained. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d. at 718; *In Re Combustion, Inc.*, 968 F.Supp., at 1139 (bringing this factor into play where an important public policy is advanced by the decision); *Feinberg v. Hibernia Corporation*, 966 F.Supp. 442, 453 (E.D.La.1997) (refusing to enhance a fee award where the settlement amount of $20,000,000.00 represented only 20%—25% of the original claim). The instant case brought about no result which affected a large class of citizens or advanced an important public policy.

### i. *The Undesirability of the Case*

 Undesirability of case ordinarily is a factor when considering a lodestar enhancement and is based upon the finding that the attorney was subjected to oppressive, unpleasant, or intimidating conditions during the representation of the client. *Cooper v. Pentecost*, 77 F.3d, at 834. This factor was added to the list by the *Johnson* Court in recognition of the possibility that representation in civil rights cases might have a negative economic impact on an attorney's practice. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d, at 718. There is no assertion by the plaintiffs in the instant case that the plaintiffs' regarded this case as an undesirable one.

### j. *Nature and Length of the Professional Relationship with the Client.*

The court in *Johnson* commented that a lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 718. Most cases find this factor inapplicable because it is normally considered when determining whether enhancement of a fee is justified. *See In re Combustion, Inc.*, 968 F.Supp. 1116, 1137 (W.D.La. 1997). This court has found no basis for enhancement or reduction of the lodestar it has calculated in the instant case.

## IV. APPLICATION OF THE LODESTAR METHOD IN THE INSTANT CASE

### a. *The Time and labor Required*

The district court must first calculate the number of hours reasonably expended on the litigation. *Kellstrom*, 50 F.3d, at 324. The calculation requires a determination of whether the total number of hours claimed were reasonable and whether specific hours claimed were reasonably expended. *Alberti v. Klevenhagen*, 896 F.2d, at 933–34. The district court must eliminate excessive or duplicative time. *Watkins*, 7 F.3d at 457. This court has reviewed the time and labor requirements set forth in the affidavits of plaintiff's counsel in order to determine the hours reasonably expended and whether the expenditure of time claimed reflects sound billing judgment for the task performed given the circumstances of the instant case. *Von Clark v. Butler*, 916 F.2d, at 258; and *Blanchard v. Bergeron*, 893 F.2d at 89.

### 1. The Time and Labor of Steve Crampton

 The affidavit of Steve Crampton shows that he spent over 90 hours between February and March of 1994 researching and writing the plaintiffs' response to the defendants' motion to dismiss or for summary judgment. Prominent in the recapitulation of this research is the issue of whether government officials are entitled to hold discovery in abeyance pending resolution of the defendants' motion to dismiss for summary judgment. This matter is referred to repeatedly in the plaintiffs' time records. Plaintiffs claim the following for research on the issue of whether discovery may be held in abeyance pending resolution of a dispositive motion claiming qualified immunity: 2–4–94 (4.0 hrs.); 2–9–94 holding discovery in abeyance and summary judgment motion (6.0 hrs.); 2–10–94 (3.0 hrs); 2–11–94 same as 2–9–94 (7.2 hrs.); 2–13–94 (5.0 hrs); 2–23–94 (2.8 hrs.); 2–24–94 (6.5 hrs); 3–1–94 (5.5 hrs.); 3–7–94 (4.0 hrs.); and 3–8–94 (3.5 hrs.). The issue regarding city officials being permitted to hold discovery in abeyance makes up a significant part of 47.5 hours claimed for research between February and March of 1994. This court finds much of this

time to be unnecessary for effective prosecution of the plaintiffs' argument on this specific issue.

The decisions of the Fifth Circuit regarding the issue of holding discovery in abeyance pending a ruling on a dispositive motion involving a qualified immunity claim control this court's determinations regarding that issue. At the time this litigation was pending, the Fifth Circuit clearly had set forth its policy regarding this issue in the case of *Lion Boulos v. Wilson*, 834 F.2d 504 (5th Cir.1987). The Fifth Circuit there stated that parties asserting the defense of qualified immunity are not immune from all discovery, only that which is avoidable or overly broad. *Id.*, at 507. Thus, said the Court, where the discovery order is narrowly tailored to uncover only those facts needed to rule on the immunity claim, the discovery is then neither avoidable nor overly broad. *Id.*, at 507–08. Moreover, the burden of negating this defense lies with the plaintiff. *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994), citing *Chrissy F. by Medley v. Mississippi Department of Public Welfare*, 925 F.2d 844, 851 (5th Cir.1991).

The foregoing principles of law relating to holding discovery in abeyance while the court rules on the issue of qualified immunity of the city officials were well established in Fifth Circuit jurisprudence for a considerable period of time prior to the instant lawsuit. The cases bearing on this issue were easily retrieved and set forth by this court within a half-hour period. Thus, it is difficult for this court to understand why counsel devoted so much time to the issue of the defendants' motion to hold discovery in abeyance. Regardless of whether the United States Magistrate Judge's ultimate ruling on the matter was correct, the plaintiffs could have found and presented the pertinent case law with relative ease. Thus, this court has done only that which is required by the Fifth Circuit in *Watkins v. Fordice*, 7 F.3d at 457—adjusted the hours claimed for research and preparation pertaining to this issue and eliminated those hours deemed by the court to be excessive.[10]

Steve Crampton's affidavit shows that the balance of the 90 hours of research and drafting time expended between February and April of 1994 was spent researching and drafting the plaintiffs' response to the motion of the City of Jackson for dismissal or summary judgment. The City of Jackson's argument was that no policy could be shown upon which the City's liability could be founded. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978) ([A] municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation"). In response to this argument Crampton's affidavit shows that at least 23 hours were spent researching and preparing the plaintiff's response and memorandum of authorities showing that the City of Jackson could be held liable under § 1983 if Chief Wilson was the policy maker for the City. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (policy making officials may subject the City to § 1983 liability). This is the basis of the plaintiffs' genuine issue of material fact argument against granting summary judgment. Only three pages of the plaintiffs' brief consisting of 13 pages is devoted to this crucial issue. Based on this question alone—whether Chief Wilson was a policy maker—this court denied the City of Jackson's motion for summary judgment. Therefore, this court has reduced some of the 23 hours claimed for the research and drafting of the plaintiffs' response because these hours exceed what this court perceives as the reasonable amount of time required for preparing the plaintiffs' response.

This court finds that the time claimed by Steve Crampton for research and for drafting his response to the motion of the defendants Gwen Harmon and Chief Wilson to dismiss or for summary judgment is mildly excessive and a reduction of hours has been made in order to reflect reasonable billing judgment regarding that matter. The time claims made are as follows: 3–10–94 (7.5 hrs); 3–11–94 (5.0 hrs); 3–12–94 (7.0 hrs);

---

10. This court has eliminated two hours claimed by associate counsel Bruce Green on February 2, 1994 for research on the issue of holding discovery in abeyance due to duplication with the hours claimed for the same work by Steve Crampton.

and 3–14–94 (9.2 hrs). Additionally, the time claimed for preparation for oral argument prior to this court's hearing on the motions of the defendants to dismiss or for summary judgment have been reduced to a more reasonable level. The time claimed by Crampton is as follows: 4–6–94 (4.5 hrs.); 4–7–94 (4.5 hrs); 4–8–94 (6.0 hrs.); 4–10–94 (1.7 hrs); and 4–11–94 (6 hrs.). The court also has reduced the number of hours claimed for this task for duplication.

Finally, this court has reduced some of the time claimed by Crampton for reviewing documents prior to taking depositions. The affidavit shows that Crampton reviewed the documents for 6.8 hours on May, 11, 1994. Then, on May 16, 17 and 18, 1994, Crampton spent four hours each day reviewing the same documents. This court perceives duplication in the claim for these hours and has made the proper adjustments.

Crampton claimed 12.3 hours for all tasks performed in December of 1993 and January of 1994. All of these hours are approved. For all tasks performed in February of 1994, Crampton claims a total of 47.9 hours. Many of hours claimed for this period were spent doing the aforesaid research on the issue of whether discovery may be held in abeyance pending resolution of a dispositive motion claiming qualified immunity. This court has reduced the number of hours for February, 1994 to 26 hours for the reasons previously stated.

For the month of March 1994 Crampton claims 74.1 hours. During the first week of March Crampton continued researching the issue of whether discovery may be held in abeyance. These hours were reduced, as were the hours spent for research and for drafting the response to the motion of the defendants Gwen Harmon and Chief Wilson to dismiss or for summary judgment. Additionally, the time claimed for preparation for oral argument prior to this court's hearing on the motions of the defendants to dismiss or for summary judgment were reduced to a more reasonable level. This court has approved 44.4 hours for the tasks performed in March, 1994.

In April of 1994 Crampton claimed 42 hours, not counting travel, for all tasks performed. This court has approved all time claimed for travel at 1/2 the rate claimed by Crampton. This court has reduced as duplicative and excessive the number of hours claimed in preparation for oral argument prior to this court's hearing on the motions of the defendants to dismiss or for summary judgment to a more reasonable level from 22.7 hours to 15 hours. Thus, the number of hours for April are reduced from 42 to 33.8.

Crampton claims 47.6 hours for all services performed in May of 1994. This court found duplication in the hours claimed in preparation for the deposition of Gwen Harmon and reduced the total claim in May to 43.5 hours. Finally, this court approves the 8.3 hours claimed for services performed by Crampton in June of 1994. Adding 12.3 hrs. + 26 hrs. + 44.4 hrs. + 33.8 hrs. + 43.5 + 8.3 hrs. for all services performed, this court arrives at the total of 168.3 hours.

Therefore, after making appropriate adjustments to eliminate those hours appearing to be excessive or duplications of work already logged in the time record, this court finds that Steve Crampton is entitled to claim 168.3 hours for his efforts on this case.

## 2. The Time and Labor of Bruce Green

██ The affidavit of Bruce Green claims just over 10 hours in August and September of 1993 for drafting intraoffice memoranda on the issues of this case for associate counsel. There is nothing to show that anyone other than Green participated in this litigation with Steve Crampton. Moreover, considering the amount of research time claimed by Crampton, it appears to this court that these intraoffice memoranda served little purpose other than to familiarize Green himself with the issues of the case. Thus, this court has reduced these hours significantly, but has allowed some of the time based on this court's perception that perhaps some useful case citations were obtained by Green. Of the 10.5 hours claimed, 3 hours have been approved.

Bruce Green claims eleven hours for securing certain audio and video tapes and for reviewing them. He claims a full compensatory rate for this work. As previously noted, the Fifth Circuit has stated that it is appropriate to distinguish between legal tasks that plainly require an attorney's skill, and other

tasks such as investigation, clerical work, and compilation of facts and statistics. This court views this work as investigative and fact-gathering in nature. Thus, this time shall be allowed, but shall be compensated at 1/2 the rate claimed by Green. *See Cruz v. Hauck,* 762 F.2d, at 1235.

Green claims hours for attending the depositions of the defendant Gwen Harmon; police officers French and Young; and officers Claiborne and Coleman. These hours duplicate those hours for the same work claimed by Steve Crampton. Neither Green nor Crampton has explained why two attorneys were required for this work or why, if two attorneys were necessary, there is no accounting for division of labor. Thus, this court has awarded these hours to Steve Crampton. This reduces the claim of Bruce Green by 19.0 hours.

Green claims 2.0 hours for drafting a letter on September 3, 1993 to "Family News in Focus" to encourage that entity to become involved in this lawsuit. The claim for drafting this letter is excessive and has been reduced to .5 hours. When reducing this claim, this court considered the claim of 1.2 hours spent by Green in conference with a representative of Family News in Focus. This time was approved. Inasmuch as Green planned to confer with the representative of Family News in Focus, this court finds no basis for spending two hours writing a letter to cover the same subject matter. The time spent conferring with the representative has not been reduced.

This court has approved Green's claim of 3.5 hours for preparing and drafting responses to interrogatories on October 19, 1993. However, Green's claim for another 3.5 hours for reviewing and editing the same material on October 20, 1993 and October 28, 1993 has been disapproved for duplication. Also, the claim of 3.5 hours spent reviewing discovery requests and responses on December 6 and 7, 1994 has been reduced to 2.0 hours.

Green's various time claims for "discussions with client" total 11.0 hours. This court has reduced this total to 7.0 hours to reflect billing judgment and to give credit for meaningful time spent with Riley learning the factual basis for his claim.

The claim of 2.0 hours on February 2, 1994 has been disapproved because it duplicates Steve Crampton's extensive research on the issue of holding discovery in abeyance.

Finally, Green has been awarded his travel time for accompanying Steve Crampton to oral argument and depositions inasmuch as he stood ready to take Crampton's place, if for any reason it had become necessary for Green to do so.

This court finds that Bruce Green shall be entitled to claim 50.5 hours for his efforts on this case at his full rate. Additionally, Green shall be granted all 11 hours spent obtaining and reviewing audio and video tapes, but at 1/2 the rate claimed. Finally, Green's travel time of 24 hours is approved for a total of 85.5 hours.

### b. *The Customary Fee and Skill Required to Perform the Legal Service*

■ As previously noted, when an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court will consider this rate when fixing the hourly rate to be allowed. Moreover, when that rate is not contested, it is prima facie reasonable. *Associated Builders & Contractors of La., Inc. v. Orleans Parish School Board,* 919 F.2d 374, 379 (5th Cir.1990) citing *Islamic Center of Mississippi, Inc. v. City of Starkville, Mississippi,* 876 F.2d at 465, 469 (5th Cir.1989).

Plaintiffs submit the affidavit of Guy Mitchell, a partner in the law firm of Mitchell, McNutt, Threadgill, Smith and Sams in Tupelo, Mississippi. According to Mitchell, the prevailing rate in the community for work similar to that performed by Crampton and Green was from $110.00 per hour to $175.00 per hour at the time the work was performed.

Plaintiffs also submit the affidavits of Matthew D. Staver and Nicholas T. Nikas. Staver, a Florida attorney who heads his own lawfirm, states that the rates claimed by Crampton and Green are comparable to the rates charged in this area of law practice. However, Staver makes no comment concerning the prevailing market rates in the

relevant community as is required by *Blum v. Stenson.* Nikas, an attorney for the American Family Association Law Center, states that constitutional trial attorneys within the State of Mississippi customarily charge rates comparable to those requested by Crampton and Green.

Steve Crampton had ten years of experience at the time he submitted this fee request in 1994, much of it before federal district courts and Circuit Courts of Appeals. He is admitted to practice before the bars of four states, including Mississippi. He handles litigation primarily in the area of constitutional law, particularly First Amendment issues.

Green had been in practice for five years at the time of the fee request in 1994. He is admitted to practice in Montana and Pennsylvania. He practices constitutional law and is the office supervisor over a staff of six attorneys.

Crampton and Green claim the rates of $175.00 and $150.00 respectively. The defendants have not challenged the rates claimed by the plaintiffs' attorneys, only the reasonableness of the hours claimed. Considering the experience of the attorneys and the prevailing rate in the relevant community for similar work, this court accepts the rates claimed by Crampton and Green and uses them to calculate the lodestar amount. *Islamic Center of Mississippi, Inc. v. City of Starkville, Mississippi,* 876 F.2d, at 469 (when the attorney's customary hourly rate is within the range of hourly fees in the prevailing market, that rate should be considered in setting a reasonable hourly rate).

### 1. The Lodestar for Reasonable Hours Expended

This court finds that Steve Crampton is entitled to claim 168.3 hours at a rate of $175.00 per hour for a total of $29,452.50. Bruce Green is entitled to claim 50.5 hours at the rate of $150.00 per hour, or $7575.00. Green also is entitled to 11 hours for time spent reviewing audio and video tapes at the rate of $75.00 per hour, or $825.00, for a total fee of $8,400.00.

### 2. Adjustment of the Lodestar Not Required

The lodestar is presumed to reflect a reasonable attorneys' fee award, but the district court may adjust it upward or downward in exceptional cases. *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992); *Walker v. United States Department of Housing and Urban Development,* 99 F.3d 761, 771–73 (5th Cir.1996). This court finds no reason to enhance or to diminish the lodestar it has calculated.

The court's lodestar calculation takes into account the time and labor of the plaintiffs' attorneys, as well as the requisite skill of the attorneys, and their experience, reputation, and ability. While the plaintiffs understandably argue that the novelty and complexity of the issues involved in this case justify a higher fee, this court is unpersuaded. This lawsuit was filed pursuant to Title 42 U.S.C. § 1983 which requires showing deprivation of a right secured by the Constitution or federal law occurring under color of state law. *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). The plaintiffs established a genuine issue of material fact regarding violation of Riley's First Amendment rights by individuals who were state actors and possibly policy makers for the City of Jackson. This court finds nothing particularly novel or complex about this litigation.

This court finds no basis for concluding that the plaintiffs' attorneys were exposed to the scorn of the community or any other ill treatment which would justify a finding that this was an undesirable case. Furthermore, this court finds nothing to support any contention that the plaintiffs' attorneys were precluded from other employment due to their representation of the plaintiffs in this case. The plaintiffs' attorneys initiated this lawsuit and saw it through to settlement. Litigation proceeded at a normal pace and no time constraints were imposed upon plaintiffs' counsel by either the clients or the circumstances. Thus, this court concludes that none of the *Johnson* factors requires adjustment of the lodestar in the instant case.

### V. TRAVEL TIME

The plaintiffs' attorneys have submitted time spent in travel between Tupelo, Missis-

sippi and Jackson, Mississippi for various matters pertaining to this litigation. They agree that this time should be compensated at 1/2 the reasonable hourly rate for their services. Therefore, this court awards Steve Crampton 32 hours × $87.50 per hour, or $2,800.00. Bruce Green is awarded 24 hours × $75.00, or $1,800.00.

## VI. CLAIM FOR TIME PREPARING FEE REQUEST

Prevailing parties are entitled to attorney's fees under § 1988 for time spent establishing and litigating a fee claim as well as for time spent prosecuting the merits of the civil rights action. *Johnson v. State of Mississippi*, 606 F.2d 635, 637–38 (5th Cir.1979). Originally, the plaintiffs' attorneys asked $9,500.00 for performing this task with no supporting documentation to justify what this court viewed as an exorbitant amount. The plaintiffs now have submitted documentation which this court has reviewed for duplication and excessive billing. After making the appropriate adjustments this court finds that the reasonable amount of compensation to Steve Crampton for litigating the fee claim is $4,637.50, 26.5 hours multiplied by the rate of $175.00. This court also has approved 3.0 hours for the preparation of Bruce Green's fee application. The additional 7.0 hours claimed for preparation and litigation of the fee application duplicate time claimed by Steve Crampton and are excessive. Thus, Bruce Green is entitled to $450.00 as reasonable compensation for preparation of his fee application.

## VII. FEE REQUEST FOR TIME EXPENDED ON APPEAL

This court has reviewed the plaintiffs' submission in support of their fee request for time spent on appeal of the matter to the United States Court of Appeals for the Fifth Circuit. Parties prevailing on appeal are entitled to reasonable attorneys' fees for the time devoted to appeal. *Bode v. United States*, 919 F.2d 1044, 1052 (5th Cir. 1990). When the Fifth Circuit vacates and remands the attorneys' fee award made by the district court, it may leave to the district court on remand the award of attorneys' fees for appeal work. *See, Fontenot v. Louisiana Board of Elementary and Secondary Edu-*

*cation*, 835 F.2d 117, 121 (5th Cir.1988); *Marston v. Red River Levee & Drainage District*, 632 F.2d 466, 468 (5th Cir.1980). This court finds the plaintiffs' fee request for time and labor on appeal of this case adequately documented and hereby awards the plaintiffs the amount of $6,827.29.

## VIII. THE PLAINTIFFS' REQUEST FOR RULE 11 SANCTIONS

On January 23, 1997 the defendants responded to the plaintiffs' motion for attorney fees and expenses. One week later, on January 31, 1997, the plaintiffs filed in this court a motion for sanctions pursuant to Rule 11 of the federal Rules of Civil Procedure. According to the plaintiffs, the defendants' response was frivolous inasmuch as the Fifth Circuit had directed this court that *Farrar v. Hobby* was not controlling in the instant case and that this court should employ the *Johnson* factors in determining an appropriate fee in the instant case. For the reasons that follow, this court finds that the plaintiffs' motion for sanctions is not properly filed and must be denied.

Rule 11 of the Federal Rules of Civil Procedure was amended effective December 1, 1993 governing civil proceedings commenced after that date and, insofar as just and practicable, all proceedings in civil cases then pending. *Elliott v. Tilton*, 64 F.3d 213, 215 (5th Cir.1995). The amended Rule 11 now provides in pertinent part as follows:

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How Initiated.

(A) By Motion. *A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may pre-*

scribe), *the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.* If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees. (emphasis added)

Therefore, under Rule 11, as amended, a motion for sanctions may not be filed until at least 21 days after service on the offending party. If the alleged violation is corrected or withdrawn during this 21–days period, then the motion should not be filed with the court. The amendment is intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. *Elliott,* 64 F.3d at 216. Thus, under Rule 11 as it is now revised, the timely withdrawal of a contention will protect a party against a motion for sanctions. *See Proposed Amendments to Federal Rules of Civil Procedure,* advisory committee's notes, reprinted in, 146 F.R.D. 401, 591 (1993). In the instant case the defendants were not afforded the opportunity to withdraw any contention found objectionable by the plaintiffs. Therefore, inasmuch as that the plaintiffs failed to follow the procedure now mandated by Rule 11 as amended, the plaintiff's motion for sanctions is hereby denied.

### IX. *CONCLUSION*

This court finds that Steve Crampton is entitled to a reasonable compensatory fee in the amount of $32,252.50, the grand total of his time expended, $29,452.50, plus travel time in the amount of $2,800.00. Bruce Green is hereby awarded $8400.00 plus $1800.00 for time spent traveling for a grand total of $10,200.00. Additionally, Steve Crampton is entitled to $4,637.50 as reasonable compensation for time expended on preparation and litigation of his fee application. Bruce Green is awarded $450.00 for the time spent in preparation of his fee appli-

cation. The plaintiffs' attorneys also have been awarded their claim for time spent on appeal in the amount of $6,827.29. Therefore, this court finds the total award of reasonable attorney fees in the instant case to be $54,367.29.